1  TOMIO B. NARITA (SBN 156576)
   tnarita@snllp.com
2  ARVIN C. LUGAY (SBN 242599)
   alugay@snllp.com
3  R. TRAVIS CAMPBELL (SBN 271580)
   tcampbell@snllp.com
4  SIMMONDS & NARITA LLP
   44 Montgomery Street, Suite 3010
5  San Francisco, CA 94104-4816
   Telephone: (415) 283-1000
6  Facsimile:  (415) 352-2625

7
   Attorneys for Defendant
8  Midland Funding, LLC

9

10              UNITED STATES DISTRICT COURT

11            SOUTHERN DISTRICT OF CALIFORNIA

12

13  SHELLY SHANNON, individually      )  CASE NO.  11CV-0239 MMA NLS
    and on behalf of others similarly )
14  situated                          )  **NOTICE OF MOTION AND MOTION**
                                       )  **TO COMPEL ARBITRATION:**
15            Plaintiffs,             )  **MEMORANDUM OF POINTS AND**
                                       )  **AUTHORITIES IN SUPPORT**
16                                     )
       vs.                             )  Date: September 12, 2011
17                                     )  Time: 2:30 p.m.
                                       )  Crtrm.: 5
18  MIDLAND FUNDING, LLC,             )
                                       )  The Honorable Michael M. Anello
19            Defendant.              )
                                       )
20  _____)

21

22

23

24

25

26

27

28

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Monday, September 12, 2011 at 2:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 5 of this Court, located at 940 Front Street, San Diego, California, the Honorable Michael M. Anello presiding, defendant Midland Funding, LLC ("Midland") will and hereby does move this Court, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* (the "FAA"), for an Order compelling plaintiff Shelly Shannon ("Shannon") to arbitrate the claims she has filed in this action on an individual basis.  Midland further seeks an order staying this action pending completion of arbitration proceedings.

This Motion is made on the grounds that a valid, enforceable and irrevocable agreement to arbitrate exists between the parties that encompasses the claims brought by Shannon; that, pursuant to the FAA, upon election by either party, Shannon must arbitrate her claims as required by the arbitration agreement in Shannon's credit card agreement; that South Dakota law governs the parties' relationship and mandates enforcement of the arbitration agreement; and that the instant action should be stayed pending completion of the arbitration.

This motion will be based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support of the motion, the Declaration of Elizabeth S. Barnette, the Declaration of Pat Minford, all papers and pleadings on file, and all other evidence or argument the Court may permit at the hearing in this matter.

DATED: July 15, 2011

SIMMONDS & NARITA LLP
TOMIO B. NARITA
ARVIN C. LUGAY
R. TRAVIS CAMPBELL


By:   s/Tomio B. Narita
      Tomio B. Narita
      Attorneys for Defendant

# TABLE OF CONTENTS

I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        A.      The Claims Asserted In This Action. . . . . . . . . . . . . . . . . . . . . . . . 1

        B.      Shannon's Account And The Binding Arbitration Agreement. . . . . . . 2

III.    ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.      Shannon's Claims Are Subject To Binding Arbitration Pursuant To The
                Arbitration Agreement Governing The Account. . . . . . . . . . . . . . . . 4

                1.      The Arbitration Agreement In The Card Agreement is Valid And
                        Enforceable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

                2.      The Arbitration Agreement In The Card Agreement is Valid And
                        Enforceable Under South Dakota Law. . . . . . . . . . . . . . . . . . 7

                3.      Shannon's Claims Fall Squarely Within The Scope Of The
                        Arbitration Agreement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        B.      This Action Must Be Stayed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

IV.     CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Arellano v. T-Mobile USA, Inc.*,
No. C-10-5663-WHA (N.D. Cal. May 16, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*AT&T Mobility LLC v. Concepcion*,
131 S. Ct. 1740 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 5, 6, 11, 12, 13

*AT&T Tech., Inc. v. Communications Workers of Am.*,
475 U.S. 643 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH*,
585 F.2d 39 (3d Cir. Pa. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Bellows v. Midland Credit Mgmt., Inc.*,
No. 09-CV-1951-LAB (S.D. Cal. May 4, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Chiron Corp. v. Ortho Diagnostic Sys.*, Inc.,
207 F.3d 1126 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Collins & Aikman Products Co. v. Building Systems, Inc.*,
58 F.3d 16 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Collins v. Burlington N. R. Co.*,
867 F. 2d 542 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Day v. Persels & Assocs., LLC*,
No. 10-CV-2463-T-33TGW (M.D. Fla. May 9, 2011). . . . . . . . . . . . . . . . . . . . . . . . 13

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Dumanis v. Citibank (South Dakota), N.A.,*
2007 WL 3253975, *3 (W.D.N.Y. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Eaves-Leanos v. Assurant, Inc.,*
2008 WL 80173 (W.D. Ky. Jan. 8, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*EEOC v. Waffle House, Inc.,*
534 U.S. 279, 289 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Fleet Tire Serv. v. Oliver Rubber Co.,*
118 F.3d 619 (8th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*First Options of Chicago, Inc. v. Kaplan,*
514 U.S. 938 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Galbraith v. Resurgent Capital Services,*
2006 WL 2990163 at *1 (E.D. Cal. Oct. 19, 2006). . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gay v. Creditinform,*
511 F.3d 369(3d Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Green Tree Fin. Corp.-Ala. v. Randolph,*
531 U.S. 79(2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Howsam v. Dean-Witter Reynolds, Inc.,*
537 U.S. 79, 83 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Lowman v. Citibank (South Dakota), N.A.,*
2006 WL 6108680  (C.D. Cal. Mar. 26, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Matter of Chicago, Milwaukee, St. Paul, & Pacific R.R.,*
789 F.2d 1281 (7th Cir.1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.,*
858 F.2d 825 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
 473 U.S. 614 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
460 U.S. 1 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*Newport Petroleum, Inc. v. Tug JUSTINE FOSS,*
1997 WL 876955 at *1 (W.D. Wash. Sep. 2, 1997) . . . . . . . . . . . . . . . . . . . . . . . . 11

*Perry v. Thomas,*
482 U.S. 483 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,*
388 U.S. 395 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Shearson/American Express, Inc. v. McMahon,*
482 U.S. 220 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Southland Corp. v. Keating,*
465 U.S. 1 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12

*Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.,*
130 S. Ct. 1758 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 11, 12

*Taylor v. Citibank USA, N.A.,*
292 F. Supp. 2d 1333 (M.D. Ala. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Volt Info. Scis., Inc. v. Board of Trs. of Leland Stanford Junior Univ.,*
489 U.S. 468 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 12

*Wolf v. Langemeier,*
2010 WL 3341823 at *4 (E.D. Cal. Aug. 24, 2010) . . . . . . . . . . . . . . . . . . . . . . . 11

*Zarandi v. Alliance Data Sys. Corp.,*
No. CV-10-8309-DSF (C.D. Cal. May 9, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# STATE CASES

*Dinsmore v. Piper Jaffray*, Inc.,
593 N.W.2d 41 (S.D. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Discover Bank v. Superior Court*,
134 Cal. App. 4th 886 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hot Springs v. Gunderson's, Inc.*,
322 N.W.2d 8 (S.D. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*L.R. Foy Constr. Co. v. Spearfish School District*,
341 N.W.2d 383 (S.D. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Nedlloyd Lines B.V. v. Superior Court*,
3 Cal. 4th 459 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Rossi Fine Jewelers, Inc. v. Gunderson*,
648 N.W.2d 812 (S.D. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Tjeerdsma v. Global Steel Bldgs., Inc.*,
466 N.W.2d 643 (S.D. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Washington Mut. Bank, FA v. Superior Court*,
24 Cal. 4th 906 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

# FEDERAL STATUTES

Fair Debt Collection Practices Act,
    15 U.S.C. § 1692 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
    15 U.S.C. § 1692e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    15 U.S.C. § 1692f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    15 U.S.C. § 1692f(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Federal Arbitration Act,
    9 U.S.C. § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5
    9 U.S.C. § 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    9 U.S.C. § 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**STATE STATUTES**

California Fair Debt Collection Practices Act
      Cal. Civ. Code § 1788 *et seq.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
      Cal. Civ. Code § 1788.17.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**OTHER AUTHORITIES**

South Dakota Attorney General Opinion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

South Dakota Codified Laws,
      54-11-9. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

In its recent decision addressing arbitration, *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011), the United States Supreme Court confirmed the strong policy favoring enforcement of private agreements to arbitrate disputes as reflected in the FAA.  When Shannon opened a credit card account with Midland's predecessor-in-interest, Citibank (South Dakota) N.A. ("Citibank"), she agreed to a broad arbitration provision, whereby any claims against Citibank or its successor or assignees relating to the account would be resolved through binding arbitration.  Midland purchased Shannon's account from Citibank after it was charged-off, and thus Midland stands in Citibank's shoes under the agreement.

The claims asserted in this action by Shannon against Midland are subject to the arbitration provision, and this motion to compel arbitration should be granted. The action should be stayed pending the resolution of the arbitration proceedings.

## II.    STATEMENT OF FACTS

### A.     The Claims Asserted In This Action

On February 4, 2011, Shannon filed this action against Midland, alleging that Midland violated various sections of the Fair Debt Collection Practices ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and the California Rosenthal Act, Civil Code section 1788 et. seq., (the "Rosenthal Act") in connection with its attempt to collect a debt from her.  *See* Complaint at ¶¶ 26-27, 43-48.  She claims that prior to December 1, 2009, she incurred certain financial obligations on a consumer account (the "Account") with Citibank through her use of a "Citibank/Sears Premier Card."  *Id.* at 16.  The account was then "assigned, placed, or otherwise transferred to Midland for collection." *Id.* at 19.  Midland later filed suit against Shannon in the Superior Court of California for the County of San Diego.  *See id.* at ¶ 20.

Shannon maintains that it was improper for Midland to seek to recover from her under an unjust enrichment theory.  She says that unjust enrichment "pre-

supposes the absence of an enforceable contract" and that the amount prayed for in the complaint – $4,022.91 – included "contractual interest, compound interest and fees." *Id*. at ¶¶ 24-27.

Based upon these allegations, Shannon claims that Midland violated section 1692e of the FDCPA by making a false, deceptive or misleading misrepresentation in connection with collection of a debt, violated section 1692f(1) by collecting an amount not authorized by agreement or statute, and violated section 1692f by using an unfair or unconscionable means to collect a debt. *Id*. at ¶ 44.  Shannon also alleges that Midland violated section 1788.17 of the Rosenthal Act, which incorporates the above-referenced sections of the FDCPA. *Id*. at ¶¶ 47-48.

## B.   Shannon's Account And The Binding Arbitration Agreement

On or about February 2006, Shannon opened the Account, a Sears-branded credit card, with Citibank. *See* Declaration of Elizabeth S. Barnette *("Barnette Decl."), ¶ 4.*  Like any other credit card account, the Account is subject to written terms and conditions reflected in a Card Agreement, which may be amended from time to time.  The Barnette Declaration attaches as Exhibit 1 an exemplar of the Card Agreement ("Card Agreement") that was sent to Shannon after the Account was opened and that applied at the time of charge-off.   It provides:  "Federal law and the law of South Dakota, where we are located, govern the terms and enforcement of this Agreement."  Barnette Decl., Ex. 1.

The Card Agreement contains an arbitration provision (the "Arbitration Agreement"), which provides that either party can elect mandatory binding arbitration on an individual, non-class basis. *Id*., ¶ 4, Ex. 2.  The Arbitration Agreement states in relevant part:

# ARBITRATION

**PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.**

*Agreement to Arbitrate*:  Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

## Claims Covered

**What Claims are subject to arbitration?**  All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision.  All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek.  This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims.  A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party.  Claims and remedies sought as part of a class action, private attorney general, or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award releif only on an individual (non-class, non representative) basis.

**Whose Claims are subject to arbitration?**  Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant, authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

\*     \*     \*

**Broadest Interpretation.**  Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced.  This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

\*     \*     \*

**Who can be a party?**  Claims must be brought in the name of an individual person or entity and must proceed on individual (non-class, non-representative) basis.  The arbitrator will not award relief for or against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney

1    general action or other representative action, nor may such Claim be pursued
2    on your or our behalf in any litigation in any court.

3  *See* Barnette Decl., Ex. 1 (bolding in original, underlining added).

4    As noted, the Arbitration Agreement includes specific language (underlined

5  above) that requires that any arbitration may resolve only individual claims.  The

6  Arbitration Agreement also includes terms:  (i) allowing for the parties to choose

7  between two arbitration firms: the AAA and the NAF; and (ii) allowing for the

8  reimbursement and/or advancement of arbitration fees.  *Id.*, Ex. 2 at 12-13.

9    Shannon does not dispute in her pleadings that she received the Arbitration

10  Agreement and used the Account, and she alleges that the Account was "assigned,

11  placed, or otherwise transferred to Midland for collection" prior to December 1, 2009.

12  *See* Complaint at 19.  Indeed, the record shows that Citibank sold the Account along

13  with a portfolio of other accounts to Midland on December 17, 2008.  *See* Declaration

14  of Pat Minford ("Minford Decl."), ¶ 2, Ex. A (Bill of Sale, Assignment and

15  Assumption Agreement), Ex. B. (Seller's Data Relating To Shannon Account).

16  Thus, Midland is the successor to Citibank and it may enforce the terms of the

17  Arbitration Agreement.

18  **III.   ARGUMENT**

19
20        **A.   Shannon's Claims Are Subject To Binding Arbitration Pursuant To
              The Arbitration Agreement Governing The Account**

21            **1.   The Arbitration Agreement In The Card Agreement is Valid
                   And Enforceable**
22

23    Section 2 of the FAA mandates that binding arbitration agreements in contracts

24  "evidencing a transaction involving [interstate] commerce . . . shall be valid,

25  irrevocable, and enforceable, save upon such grounds as exist at law or in equity for

26  the revocation of any contract."  9 U.S.C. § 2; *see Buckeye Check Cashing, Inc. v.*

27  *Cardegna*, 546 U.S. 440, 443 (2006) ("Section 2 [of the FAA] embodies the national

28  policy favoring arbitration and places arbitration agreements on equal footing with all

   other contracts."); *see also AT&T Mobility*, 131 S. Ct.  at 1748 ("Section 2 [of the

1  FAA] makes arbitration agreements 'valid, irrevocable, and enforceable' as written . .

2  . .").  The United States Supreme Court has repeatedly recognized that the FAA is

3  extremely broad and applies to any transaction directly or indirectly affecting

4  interstate commerce.  *See, e.g., Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265,

5  277 (1995); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401

6  (1967).[1]

7       The FAA promotes a "liberal federal policy favoring arbitration agreements,"

8  and "questions of arbitrability must be addressed with a healthy regard for the federal

9  policy favoring arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,

10  460 U.S. 1, 24 (1983); *see also Perry v. Thomas*, 482 U.S. 483, 490-91 (1987)

11  (stating that arbitration agreements falling within the scope of the FAA "must be

12  'rigorously enforce[d]'" (citations omitted)); *AT&T Mobility LLC*, 131 S. Ct. at 1745.

13  Indeed, as recently confirmed by the Supreme Court, the "'principal purpose' of the

14  FAA is to 'ensur[e] that private arbitration agreements are enforced according to their

15  terms.'"  *AT&T Mobility LLC*,  131 S. Ct. at 1748.[2]

16       In short, the "overarching purpose of the FAA, evident in the text of §§ 2, 3

17  and 4, is to ensure the enforcement of arbitration agreements according to their terms

18  so as to facilitate streamlined proceedings."  *AT&T Mobility*, 131 S. Ct. at 1748.

19  Section 4 of the FAA "requires courts to compel arbitration 'in accordance with the

20  terms of the agreement' upon the motion of either party to the agreement . . . ."

21  *AT&T Mobility LLC*, 131 S. Ct. at 1748.  Indeed, the United States Supreme Court

22  has held that the FAA "leaves no place for the exercise of discretion by a district

23

24       [1] There is no question that the FAA applies to this dispute because the credit card
transactions at issue were made between Plaintiff, who resides in California, and

25  Citibank, a national banking association located in South Dakota.  Barnette Decl., ¶1.
The Arbitration Agreement explicitly states that "[t]his arbitration provision is governed

26  by the [FAA]."  *Id.*, Ex. 2 at 14.

27

28       [2] *See also Volt Info. Scis., Inc. v. Board of Trs. of Leland Stanford Junior Univ.*,
489 U.S. 468, 479 (1989); *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 130 S. Ct. 1758,
1775 (2010) (citations omitted).

court, but instead mandates that district courts shall direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

By consenting to bilateral arbitration, the "parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution:  lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Stolt-Nielsen*, 130 S. Ct. at 1775 (citations omitted).[3]  Thus, "parties may agree to limit the issues subject to arbitration [citation], to arbitrate according to specific rules [citation], and to limit with whom a party will arbitrate its disputes [citation]." *AT&T Mobility*, 131 S. Ct. at 1748-49 (citations omitted).[4]  Ultimately, "[i]t falls to courts and arbitrators to give effect to these contractual limitations, and when doing so, courts and arbitrators must not lose sight of the purpose of the exercise:  to give effect to the intent of the parties." *Stolt-Nielsen*, 130 S. Ct. at 1774-75; *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002).

Under the FAA, arbitration must be compelled where, as here:  (1) a valid, enforceable agreement to arbitrate exists; and (2) the claims at issue fall within the scope of that agreement. *See, e.g., Chiron Corp. v. Ortho Diagnostic Sys.*, Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).  An arbitration agreement governed by the FAA, like the Arbitration Agreement here, is presumed to be valid and enforceable. *See*

---

[3] "Underscoring the consensual nature of private dispute resolution . . . parties are 'generally free to structure their arbitration agreements as they see fit.'" *Id.* 130 S. Ct. at 1774 (citations omitted).

[4] In fact, the "point of affording parties discretion in designing arbitration processes is to allow for efficient, streamlined procedures tailored to the type of dispute . . . .  And the informality of arbitral proceedings is itself desirable, reducing the cost and increasing the speed of dispute resolution." *Id*. at 1749.

1  *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Mitsubishi*

2  *Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-27 (1985).[5]

3      The FAA "establishes that, as a matter of federal law, any doubts concerning

4  the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H.*

5  *Cone*, 460 U.S. at 24-25.[6]  The party resisting arbitration bears the burden of showing

6  that the arbitration agreement is invalid or does not encompass the claims at issue.

7  *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

8      Applying these rules, numerous courts across the country have upheld and

9  enforced virtually identical arbitration agreements utilized by Citibank.  *See e.g.,*

10  *Lowman v. Citibank (South Dakota), N.A.*, 2006 WL 6108680  (C.D. Cal. Mar. 26,

11  2006); *Dumanis v. Citibank (South Dakota), N.A.*, 2007 WL 3253975, *3 (W.D.N.Y.

12  2007); *Eaves-Leanos v. Assurant, Inc.*, 2008 WL 80173 (W.D. Ky. Jan. 8, 2008);

13  *Taylor v. Citibank USA, N.A.*, 292 F. Supp. 2d 1333 (M.D. Ala. 2003).

        **2.  The Arbitration Agreement In The Card Agreement is Valid**
14
              **And Enforceable  Under South Dakota Law**
15
    The Card Agreement, which contains the Arbitration Agreement, is expressly
16
governed by a South Dakota choice-of-law provision.[7]  Barnette Decl., Ex. 2.  While
17

18

19     [5] The FAA preempts any state law "to the extent that [the state law] stands as an
obstacle to the accomplishment and execution of the full purposes and objectives of
20  Congress" in passing the FAA.  *Volt*, 489 U.S. at 477 (internal quotation marks and
citations omitted); *see also Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984) (striking
21  down California law that sought to insulate certain issues from arbitration).

22

23     [6] *See also Gay v. Creditinform*, 511 F.3d 369, 388-89, 394 (3d Cir. 2007) (quoting
24  *Volt*, 489 U.S. at 479) (holding that "[a]n agreement to arbitrate is valid, irrevocable, and
enforceable, as a matter of federal law, 'save upon such grounds as exist at law or in
25  equity for the revocation of any contract'" (emphasis in original)).

26

27     [7] Pursuant to *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 470 (1992),
and *Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 914-15 (2001), the
28  South Dakota choice-of-law provision is enforceable because:  (i) South Dakota has a
substantial relationship to the parties and the transaction (*i.e.*, Citibank is located in

1   the FAA exclusively governs the enforceability of the Arbitration Agreement

2   according to its terms, South Dakota law governs the determination of whether a valid

3   agreement to arbitrate exists.  *See Dinsmore v. Piper Jaffray*, Inc., 593 N.W.2d 41, 44

4   (S.D. 1999) ("the question of whether the parties entered into a valid agreement to

5   arbitrate is a question for the court to determine applying state contract law

6   principles"); *accord First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944

7   (1995) ("When deciding whether the parties agreed to arbitrate a certain matter

8   (including arbitrability), courts generally . . . should apply ordinary state-law

9   principles that govern the formation of contracts.").

10          Consistent with the terms of the Card Agreement here, South Dakota law

11  expressly provides:

12          The use of an accepted credit card or the issuance of a credit card agreement
            and the expiration of thirty days from the date of issuance without written
13          notice from a card holder to cancel the account creates a binding contract
            between the card holder and the card issuer with reference to any accepted
14          credit card, and any charges made with the authorization of the primary card
            holder.
15

16  S.D. Codified Laws § 54-11-9; *see* Barnette Decl., Ex. 1 at 2 ("This Agreement is

17  binding on you unless you cancel your account within 30 days after receiving the card

18  and you have not used or authorized use of your card.").  Shannon concedes that she

19  used the Account and, therefore, assented to the terms of the Card Agreement,

20  including the Arbitration Agreement.  *See* Complaint at ¶ 16 (alleging that Shannon

21  "incurred certain financial obligations to 'Citibank/Sears Premier Card.'").  The

22  Account, and therefore this dispute, is subject to the Arbitration Agreement.

23          The Arbitration Agreement is valid under South Dakota law.  South Dakota,

24  like most states, strongly endorses arbitration as an alternative method to resolving

25  disputes.  The South Dakota Supreme Court has instructed that, "[i]f there is doubt

26  whether a case should be resolved by traditional judicial means or by arbitration,

27

28  South Dakota); and (ii) South Dakota law is not contrary to any fundamental public
    policy of California.  *See Discover Bank v. Superior Court*, 134 Cal. App. 4th 886, 892-
    93 (2005).

arbitration will prevail." *Rossi Fine Jewelers, Inc. v. Gunderson*, 648 N.W.2d 812, 814 (S.D. 2002) ("We have consistently favored the resolution of disputes by arbitration. … There is an overriding policy favoring arbitration when a contract provides for it."); *Dinsmore*, 593 N.W.2d at 44-45, 47 (enforcing arbitration agreement in preprinted securities account agreement, even though the parties had expressly agreed to delete an arbitration provision in an earlier agreement and the defendant did not call the arbitration agreement to its customer's attention).

This "overriding" public policy also is confirmed in the South Dakota Attorney General Opinion:

> The purpose of arbitration is to permit a relatively quick and inexpensive resolution of contractual disputes by avoiding the expense and delay of extended court proceedings." *Tjeerdsma v. Global Steel Bldgs., Inc.*, 466 N.W.2d 643 (S.D. 1991), quoting *L.R. Foy Constr. Co. v. Spearfish School District*, 341 N.W.2d 383, 388 (S.D. 1983) (Henderson, J., specially concurring) (citations omitted).  South Dakota law, like federal law and the law of most states, encourages private parties to resolve both existing and future disputes by extra-judicial means such as arbitration.  "A strong policy exists favoring the arbitration of disputes where the parties have bargained for this procedure." *Hot Springs v. Gunderson's, Inc.*, 322 N.W.2d 8 (S.D. 1982).

*See* South Dakota Attorney General Opinion at 2 (Attached as Ex. A).

The Arbitration Agreement expressly permits either party to elect mandatory, binding arbitration for any claim, dispute, or controversy between the parties, and Midland properly chooses to do so.  The Court should grant the motion.

### 3.      Shannon's Claims Fall Squarely Within The Scope Of The Arbitration Agreement

When the Court determines that the parties have a binding arbitration agreement, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986); *see also McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988) (noting distinction between "broad" clauses that purport to refer to arbitration of all disputes arising out of a contract and "narrow" clauses that limit arbitration to

specific types of disputes).  Where the clause is broad, as here, there is a heightened presumption of arbitrability such that "[in] the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Tech.*, 475 U.S. at 650.[8]

Here, the Arbitration Agreement extends to "[a]ll Claims relating to your account, a prior related account, or our relationship," which "includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law . . . ."  Barnette Decl., Ex. 1.   The Arbitration Agreement squarely covers Shannon's claims, which challenge Midland's alleged conduct when attempting to collect the unpaid balance of the Account.  These claims clearly "relate to" Shannon's Account and are subject to the Arbitration Agreement.  *See Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH*, 585 F.2d 39, 46 (3d Cir. Pa. 1978) (arbitration agreement including phrase "arising out of and about" encompasses matters that "[arise] in the course of and during the on-going relationship … created and governed…" by the contract containing the arbitration provision).

Shannon's claims against Midland are subject to the Arbitration Agreement, because Midland is Citibank's assignee and successor in interest.  An assignee can enforce an arbitration clause in a contract of an assignor.  *See Matter of Chicago, Milwaukee, St. Paul, & Pacific R.R.*, 789 F.2d 1281, 1282 (7th Cir.1986) (successor in interest to railroad company had the duty to arbitrate under arbitration clause contained in a contract signed by its predecessor with third parties); *Galbraith v. Resurgent Capital Services*, 2006 WL 2990163 at *1 (E.D. Cal. Oct. 19, 2006) (assignee of consumer account entitled to invoke arbitration clause in contract

---

[8] *Accord Fleet Tire Serv. v. Oliver Rubber Co.*, 118 F.3d 619, 621 (8th Cir. 1997); *Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (holding that, where the clause is broad, "then there is a presumption that the claims are arbitrable")

between consumer and assignor); *Wolf v. Langemeier,* 2010 WL 3341823 at *4 (E.D. Cal. Aug. 24, 2010) (staying action pending arbitration and holding that "[n]onsignatory successors . . . are entitled to compel arbitration under clauses signed by the corporations whose liabilities they are alleged to have assumed."); *Newport Petroleum, Inc. v. Tug JUSTINE FOSS*, 1997 WL 876955 at *1 (W.D. Wash. Sep. 2, 1997) ("A successor in interest can enforce an arbitration clause in a contract signed by its predecessor.")

In addition, the Arbitration Agreement explicitly states that assignees and successors in interest like Midland can invoke arbitration. It provides: "**Whose Claims are subject to arbitration?**" and answers " Not only ours and yours, but also Claims made … *against anyone connected with us* … such as a . . . *successor, heir, assignee* . . . . " Barnette Decl., Ex. 1, p. 11 (bolding in original, italics added). Shannon expressly alleges that her account was "allegedly assigned, placed, or otherwise transferred, to Defendant Midland for collection." *See* Complaint at ¶ 19. The record is undisputed that Citibank sold the account to Midland on December 17, 2008, and thus Midland is an assignee and successor in interest who may enforce the Arbitration Agreement. *See* Minford Decl., ¶ 2, Exs. A and B.

## B.     Shannon's Claims Must Proceed To Arbitration On An Individual Basis

As confirmed in *AT&T Mobility*, the Court must enforce the Arbitration Agreement as written, including its clear language requiring arbitration on an individual basis. The "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility*, 131 S. Ct. at 1748 (citations omitted). Thus, "parties may agree to limit the issues subject to arbitration, to arbitrate according to specific rules, and to limit with whom a party will arbitrate its disputes." *Id.*, 131 S. Ct. at 1748-49 (emphasis in original) (citations omitted); *Stolt-Nielsen*, 130 S. Ct. at 1774 ("Underscoring the consensual nature of private dispute resolution . . . parties are 'generally free to structure their arbitration agreements as they see fit.'") (citations omitted). "Arbitration is a matter of contract,

1   and the FAA requires courts to honor parties' expectations." *AT&T Mobility*, 131 S.

2   Ct. at 1753; *Howsam v. Dean-Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)

3   ("[A]rbitration is a matter of contract and a party cannot be required to submit to

4   arbitration any dispute which he has not agreed so to submit.") (internal quotation

5   marks and citation omitted).

6        By using her Account, Shannon assented that: "Claims and remedies sought as

7   part of a class action, private attorney general or other representative action are

8   subject to arbitration on an individual (non-class, non-representative) basis, and the

9   arbitrator may award relief only on an individual (non-class, non-representative)

10   basis." (Barnette Decl., Ex. 1.)  The Arbitration Agreement confers on the arbitrator

11   only the authority to decide individual claims, and not to make any award, or consider

12   any claims, by or relating to any other person.  This language unequivocally

13   demonstrates the parties' intent to arbitrate claims only on an individual basis and

14   "the FAA requires courts to honor parties' expectations." *AT&T Mobility*, 131 S. Ct.

15   at 1753 (emphasis added); *Stolt-Nielsen*, 130 S. Ct. at 1776 (the FAA requires that

16   class arbitration may only be ordered when the parties expressly agree to class

17   arbitration).

18        Furthermore, the FAA preempts state laws that attempt to regulate the terms of,

19   and parties to, arbitration or otherwise challenge the arbitration process based on the

20   terms under which the arbitration will take place.  *See AT&T Mobility*, 131 S. Ct. at

21   1753 (abrogating California law invalidating arbitration agreements that contain a

22   class action waiver because the law "stands as an obstacle to the accomplishment and

23   execution of the full purpose and objectives of Congress" in establishing the FAA)

24   (internal quotations and citations omitted); *Volt Info. Scis.*, 489 U.S. at 477;

25   *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984) (striking down California law that

26   sought to insulate certain issues from arbitration).

27        In the short time since *AT&T Mobility* was handed down, courts have

28   confirmed that, under the FAA, state law challenges to arbitration agreements that

contain class action waivers are not viable.  *See, e.g., Arellano v. T-Mobile USA, Inc.*, No. C-10-5663-WHA, 2011 WL 1842712, at *2-3 (N.D. Cal. May 16, 2011) (compelling arbitration of class claims for injunctive relief because *AT&T Mobility* "compels preemption . . . [of] California's exemption of claims for public injunctive relief from arbitration, at least for actions in federal court."); *Zarandi v. Alliance Data Sys. Corp.*, No. CV-10-8309-DSF, 2011 WL 1827228, at *2 (C.D. Cal. May 9, 2011) (compelling arbitration of class claims because *AT&T Mobility* confirms that "the FAA preempts state law to the extent it prohibits arbitration of a particular type of claim."); *Day v. Persels & Assocs., LLC*, No. 10-CV-2463-T-33TGW, 2011 WL 1770300, at *5 (M.D. Fla. May 9, 2011) (under *AT&T Mobility* arbitration agreement with class action waiver not unconscionable under Florida law); *Bellows v. Midland Credit Mgmt., Inc.*, No. 09-CV-1951-LAB, 2011 WL 1691323, at *3 (S.D. Cal. May 4, 2011) (compelling arbitration in putative class action because *AT&T Mobility* "mak[es] clear the agreement to arbitrate is not substantively unconscionable merely because it includes a class action waiver.").

## C.    This Action Must Be Stayed

Section 3 of the FAA provides that, where a valid arbitration agreement requires a dispute to be submitted to binding arbitration, the district court shall stay the action "until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3; *see AT&T Mobility LLC*, 131 S. Ct. at 1748 (Section 3 of the FAA "requires courts to stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement.'"); *see also Collins v. Burlington N. R. Co.*, 867 F. 2d 542, 545 (9th Cir. 1989) (remanding case where district court failed to consider whether a stay was appropriate as a result of binding arbitration agreement).

Midland respectfully requests that this Court stay this action pending completion of the arbitration.

1  **IV.**   **CONCLUSION**

2         For each of the forgoing reasons, Midland respectfully requests that the Court

3  grant this Motion and issue an Order compelling arbitration of Shannon's claims in

4  accordance with the express terms of the valid and enforceable Arbitration Agreement

5  governing the Account.  In addition, the Court should stay this action pending the

6  completion of arbitration proceedings.

7

8  DATED: July 15, 2011                    SIMMONDS & NARITA LLP
                                           TOMIO B. NARITA
9                                          ARVIN C. LUGAY
                                           TRAVIS B. CAMPBELL
10

11                                    By:   s/Tomio B. Narita
                                           Tomio B. Narita
12                                         Attorneys for Defendant
                                           Midland Funding, LLC
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit A

05/17/02   FRI 08:02 FAX 605 330 6745          CBSD LEGAL              --- UCS LEGAL          ☎002

STATE OF SOUTH DAKOTA



**OFFICE OF ATTORNEY GENERAL**
500 East Capitol Avenue
Pierre, South Dakota 57501-5070
Phone (605) 773-3215
FAX (605) 773-4106
www.state.sd.us/att¡

**MARK BARNETT**
ATTORNEY GENERAL

**LAWRENCE LONG**
CHIEF DEPUTY ATTORNEY GENERAL

May 7, 2002

Richard R. Duncan
Director of Banking
State of South Dakota
217 1/2 West Missouri Avenue
Pierre, SD  57501-4590

RECEIVED
MAY -9 2002
S.D. DIVISION OF BANKING

Re: Arbitration Clause/Credit Cards

Dear Mr. Duncan:

Your request for an opinion from this Office concerning the following facts has been referred to me for response:

<u>FACTS:</u>

Over the last several years credit card issuers across the country have begun to amend the agreements they have with their cardholders to permit or require certain disputes to be resolved by binding arbitration. Arbitration offers a quick and inexpensive way to resolve disputes without clogging the already overburdened court systems with unnecessary litigation.

South Dakota has two statutes that clearly enunciate this state's policy in this area. First, SDCL 54-11-10 explicitly authorizes credit card issuers to change the terms of their existing credit card agreements by the simple practice of sending notices of the changed terms to cardholders. Second, SDCL 21-25A-1 expresses the state's policy in favor of arbitration; it states that arbitration agreements are "valid, enforceable and irrevocable" in South Dakota.

South Dakota law thus encourages the use of arbitration to resolve disputes, and it permits credit card issuers to add arbitration clauses to their contracts by sending written

05/17/02  FRI 08:02 FAX 605 330 6745          CBSD LEGAL                    --- UCS LEGAL          @003

Richard A. Duncan
May 7, 2002
Page 2

notices to their cardholders.  Various lenders have asked me
whether they may rely on these statutes to validate
arbitration clauses that they may decide to add to their
agreements.

In order to assure that authoritative advice is provided to these
lenders, I would appreciate it if your office could prepare an opinion
responding to the following question:

QUESTIONS:

1.  May a credit card issuer rely on SDCL 54-11-10 to add a
provision to its existing agreements that requires or permits
disputes between the issuer and its cardholders to be
resolved by binding arbitration?

2.  If the answer is "Yes," please identify any special
procedures that should be followed by card issuers and any
limitations on the issuer's rights to require or permit
arbitration.

IN RE QUESTION No. 1:

"The purpose of arbitration is to permit a relatively quick and
inexpensive resolution of contractual disputes by avoiding the expense
and delay of extended court proceedings." Tjeerdsma v. Global Steel
Bldgs., Inc., 466 NW2d 643 (S.D. 1991), quoting L.R. Foy Const. Co. v.
Spearfish School District., 341 NW2d 383, 388 (S.D. 1983) (Henderson,
J., specially concurring) (citations omitted).  South Dakota law, like
federal law and the law of most other states encourages private parties
to resolve both existing and future disputes by extra-judicial means such
as arbitration.  "A strong policy exists favoring the arbitration of disputes
where the parties have bargained for this procedure." City of Hot Springs
v. Gunderson's, Inc., 322 NW2d 8 (SD 1982).

Thus, while the general rule is that contracts seeking to restrain
legal proceedings are void under SDCL 53-9-6, the Legislature has
created an exception for agreements to submit controversies to
arbitration.  SDCL 53-9-6 provides in pertinent part:

Every provision in a contract restricting a party from
enforcing his rights under it by usual legal proceedings in
ordinary tribunals, or limiting his time to do so, is void.

Richard A. Duncan
May 7, 2002
Page 3

However, agreements to submit controversies to arbitration, as authorized by the Uniform Arbitration Act, are valid and enforceable . . . .

Likewise, SDCL 21-25A-1 provides:

A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract. This chapter also applies to arbitration agreements between employers and employees or between their respective representatives.

Federal law is similar. "Section 2 of the Federal Arbitration Act provides that written arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for revocation of any contract. 9 U.S.C. §2." Equipment Manufacturers Institute v. Janklow, 2001 DSD 11, ¶26, 135 F.Supp.2d 991, 1000 (D.S.D. Mar 30, 2001).

It is against this pro-arbitration backdrop that your question concerning insertion of arbitration provisions into existing credit card agreements must be examined. Under South Dakota law, the terms and conditions of a credit card plan are a matter of contract. The contract is created if the card holder uses an issued credit card, or if a credit card agreement is issued and the card holder does not cancel the card within thirty days. SDCL 54-11-9. The Legislature has, with certain exceptions not relevant here, by and large left it up to the parties to define the extent of those terms and conditions, including amendments to the credit card agreement. SDCL 54-11-10 provides:

Upon written notice, a credit card issuer may change the terms of any credit card agreement, if such right of amendment has been reserved, including finance charges, fees and other costs, effective as to existing balances, so long as the card holder does not, within twenty-five days of the effective date of the change, furnish written notice to the issuer that he does not agree to abide by such changes. Upon receipt of such written notice by the issuer, the card holder shall have the remainder of the time under the existing terms in which to pay all sums owed to the issuer or

Richard A. Duncan
May 7, 2002
Page 4

creditor. Use of the card after the effective date of the change of terms, including a change in interest rates, is deemed to be an acceptance of the new terms, even though the twenty-five days have not expired.

Thus a credit card issuer who has reserved the right to amend the credit card agreement may change the terms and conditions of a credit card contract simply by sending notice to the card holder that it is doing so. If the card holder does not object in writing within 25 days, the change is agreed to. If the card holder uses the card after notice of the change, the change is agreed to. If the card holder does not agree with the change, he can send written notice to the issuer, pay off the outstanding amount, and in effect, cancel the card. In light of the clear state and federal policies favoring arbitration, I see no reason why an arbitration clause consistent with state and federal law cannot be included in a credit card agreement pursuant to SDCL 54-11-9.

Assuming the credit card issuer has reserved the right to amend a credit card agreement, I find nothing in the statutory scheme that limits the use of the procedure set forth in SDCL 54-11-10 to add an arbitration provision to existing agreements  The card holder, of course, has the right to accept or reject such an amendment as set forth in that statute. My answer to your first question is "Yes."

IN RE QUESTION NO. 2:

Your second question seeks our advice in identifying any special procedures that need to be followed by card issuers in making these amendments and any limitations on the issuer's rights to require or permit arbitration. It seems to me that these matters, like other amendments to credit card agreements implemented through SDCL 54-11-10, are most appropriately left to the credit card issuers and their attorneys. Therefore, your request for this Office to opine on this second question is respectfully declined.

Respectfully submitted,

Harold H. Deering, Jr.
Assistant Attorney General

HHD

## CERTIFICATE OF SERVICE

I, the undersigned, hereby declare:

I am a citizen of the United States and employed in San Francisco County, California. I am over the age of eighteen and not a party to the within-entitled action. My business address is: 44 Montgomery Street, Suite 3010, San Francisco, CA 94104.

On July 15, 2011, I served a copy of the within document by electronic transmission. I hereby certify that the foregoing document was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all parties on the electronic service list maintained for this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 15th day of July, 2011 at San Francisco, California.

/s/ Tomio B. Narita
Tomio B. Narita