Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
**Hyde & Swigart**
411 Camino Del Rio South, Suite 301
San Diego, CA 92108-3551
(619) 233-7770
(619) 297-1022

Stephen G. Recordon (SBN 91401)
**Recordon & Recordon**
225 Broadway, Suite 1900
San Diego, CA  92101
Phone: (619) 232-1717
Facsimile: (619) 232-5325
Attorneys for Plaintiffs

[Additional Attorneys on Signature Page]

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Shelly Shannon, individually and on behalf of others similarly situated<br><br>                      Plaintiffs,<br><br>v.<br><br>Midland Funding, LLC,<br><br>                Defendant. | **Case No: 11CV-0239 MMA NLS**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>**Date: September 12, 2011**<br>**Time: 10:00 AM**<br>**Crtrm.: 5**<br><br>**Judge: Hon. Michael M. Anello** |

HYDE & SWIGART
San Diego, California

## Table of Contents

I.     INTRODUCTION ...........................................................................................1

II.    ARGUMENT .................................................................................................1

       A.    There is No Evidence Of Any Arbitration Agreement Here ...................1

       B.    Even if there was an arbitration agreement, Midland Waived that issue long ago
             ...........................................................................................................1

       C.    Arbitration cannot be compelled when arbitration would waive statutory rights
             under the federal Fair Debt Collection Practices Act, 15 U.S.C. §§1692 et seq.
             ("FDCPA") .............................................................................................3

       D.    Arbitration also cannot be compelled when arbitration would waive statutory
             rights under the California's Rosenthal Fair Debt Collection Practices Act,
             California Civil Code §§ 1788-1788.32 ("Rosenthal Act") ......................4

       E.    Judicial Estoppel ....................................................................................6

             1. The "Minority View" is the applicable standards for judicial estoppel in the
             Ninth Circuit .............................................................................................7

                 i. Supreme Court Does Not Require Adoption By The Prior Court Of the
                 Inconsistent Position .............................................................................7

                 ii. Ninth Circuit Also Does Not Require Adoption By The Prior Court Of The
                 Inconsistent Position .............................................................................8

             2. Midland has asserted a prior inconsistent position ................................10

                 i. Unjust Enrichment .........................................................................11

                 ii. Account Stated .............................................................................13

             3. Midland has played "fast and loose" with the courts ............................13

III.   CONCLUSION ...........................................................................................17

HYDE & SWIGART
San Diego, California

**Table of Authorities**
<u>**Cases**</u>

*Abels v. JBC Legal Group. PC,*
    227 f.r.d. 541 (N.D. Cal. 2005) ........................................................5

*American Express II,*
    634 F.3d at 199 ....................................................................................4

*Britton v. Co-op Banking Group,*
    4 F. 3d 742, 74 (9th Cir 1993) .........................................................9

*Chen-Oster v. Goldman, Sachs & Co.,*
    2011 U.S. Dist. LEXIS 73200, *10 (S.D.N.Y. July 7, 2011) ...........4

*Christensen v. Dewor Devs.,*
    (1983) 33 C3d 778, 781-783, 191 CR 8, 661 P2d 1088 ...................2

*Continental D.I.A. Diamond Products, Inc. v. Dong Young Diamond Industrial Co., Ltd,*
    2008 U.S. Dist. LEXIS 65908, 12 (ND Cal, August 26, 2008) .........12

*Doers v. Golden Gate Bridge, Highway & Transp. Dist.,*
    (1979) 23 C3d 180, 188, 151 CR 837, 588 P2d 1261 .....................2

*Engalla v. Permanente Med. Group, Inc.,*
    (1997) 15 C4th 951, 983-984, 64 CR2d 843, 938 P2d 903. ............2

*Federal Deposit Insurance Corporation v. Dintino,*
    (2008) 167 Cal App 4th 333, 357-358 ............................................15

*Gerlinger v. Amazon,*
    311 F Supp 2d 838, 856 (ND Cal, March 23, 2004) ...................11, 12

*Gustafson v. State Farm Mut. Auto. Ins. Co.*
    (1973) 31CA3d 361 , 365, 107 CR 35 .............................................. 2

*Harp Inc. v. Miller Hay Company,*
    (1968) 261 Cal App 2d 81, 84 ........................................................13

*Helfand v. Gerson,*
    105 F 3d 530, 535 (9th Cir 1997) ....................................................7

*Johnson v. State of Oregon,*
    141 F.3d 1361, 1369 (9th Cir 1998) ....................................10, 13, 16

HYDE & SWIGART
San Diego, California

ii

HYDE & SWIGART
San Diego, California

*Jones v. Wilton,*
   (1938) 10 Cal. 2d 493 ...............................................................................13

*Law Offices of Dixon R. Howell v. Valley,*
   (2005) 129 CA4th 1076, 1096-1098 ..........................................................2

*McCollough v. Johnson,*
   2011 U.S. App. LEXIS (9th Cir. mont. Mar. 4, 2011)................................ 1

*McMillin Dev., Inc. v. Home Buyers Warranty,*
   (1998) 68 CA4th 896, 909, 80 CR2d 611 ..................................................2

*Merchantile Trust Company of San Francisco v. Charles P Doe,*
   (1914) 26 Cal App 246, 252 .....................................................................13

*Saint Agnes Med. Ctr. v. PacifiCare of Cal.,*
   (2003) 31 C4th 1187, 1200-1205 ..............................................................2

*Shearson/American Express, Inc. v. McMahon,*
   482 US 220, 227, 107 S Ct 2332, 96 L Ed2d 185 (1987) ..........................3

*Shroyer v. New Cingular Wireless Servs.,*
   498 F3d 976, 987, (9th Cir 2007).............................................................4, 5

*Wagner Construction Co. v. Pacific Mechanical Corp.,*
   41 C4th 19, 27-31, 58 CR3d 434, 157 P3d 1029 ...................................... 2

*Wyatt v. Creditcare, Inc.,*
   2005 U.S. Dist. LEXIS 25787, *9 (N.D. Cal. Oct. 21, 2005)....................3

*McDonald v. Bonded Collectors, LLC,*
   233 F.R.D. 576, 2005 U.S. Dist. LEXIS 17365, 2005 WL 2008202 (S.D.Cal. 2005).........5

*Milgard Tempering v. Selas Corporation of America,*
   902 F 2d 703, 716 (9th Cir 1990)...............................................................9

*Mitsubishi Motors Corp.,*
   473 U.S. at 627 ...........................................................................................4

*Morris v. California,*
   945 F.2d 1456, 1459-1460 (9th Cir. 1991) ................................................9

*New Hampshire v. Maine,*
   532 US 742, 749-750 (2001)............................................................7, 8, 17

*Palmer v. Stassinos,*
    233 F.R.D. 546, 2006 U.S. Dist. LEXIS 2617, 2006 WL 83059 (N.D. Cal. 2006) .............5

*Perry v. Thomas,*
    482 US 483, 493 n 9, 107 S Ct 2520; 96 L Ed2d 426, (1987) .............................................4

*Qwest Communications Corporation v. Herakles, LLC,*
    2008 U.S. Dist. LEXIS 22154, 36-37 (ED Cal, March 20, 2008) .....................................12

*Ragone v. Atlantic Video at Manhattan Center,*
    595 F.3d 115, 125 (2d Cir. 2010).......................................................................................4

*Religious Tecnology Center v. Scott,*
    1996 US App LEXIS 8954, 31 (Ninth Cir 1996) ..................................................13, 14, 15

*Ryan Operations GP v. Santiam-Midwest Lumber Co.,*
    81 F.3d 1361, 1369 (9th Cir 1998) ................................................................................9, 10

*Sanchez v. Western Pizza Enterprises, Inc.,*
    172 CA4th 154, 181 90 CR3d 818 (2009) ..........................................................................6

*Stevens Tech. Serv. v. SS Brooklyn,*
    885 F.2d 584, 588 (9th Cir 1989)..............................................................................7, 8, 9

*Total Coverage, Inc. v. Cedent Settlement Services Group, Inc.,*
    225 Fed. Appx. 123, 125- 126 (Ninth Cir 2007)........................................................12, 15

*United States v. Garcia,*
    F.3d 1359, 1367 (9th Cir 1993) ..........................................................................................9

*Zedner v. United States,*
    547 U.S. 489, 505 (2006) ..............................................................................................8, 9

HYDE & SWIGART
San Diego, California

1

**Table of Exhibits**

2

3

**Plaintiff's Exhibit A**.................................................................................................................**6**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**HYDE & SWIGART**
San Diego, California

**I. INTRODUCTION**

Midland Funding hopes to compel arbitration based on a form contract that it claims, without proof, was agreed to by the parties. Midland provides no evidence whatsoever of this contention even though any burden would fall squarely on the shoulders of Midland. Further, even if such an arbitration agreement did exist it would be unenforceable for a number of reasons.

First, Midland has long ago waived any potential arbitration agreement. Secondly, Midland hopes to compel arbitration of issues on which arbitration cannot be compelled under state or federal law. Finally, this new found claim of a contractual right to compel arbitration is in direct contradiction of Midland's earlier representations, a basis for judicial estoppel.

**II. ARGUMENT**

**A. THERE IS NO EVIDENCE OF ANY ARBITRATION AGREEMENT HERE.**

Midland has provided no admissible evidence of any arbitration agreement in this case generally, nor have they submitted evidence that an arbitration agreement was specifically agreed to by Ms. Shannon. In *McCollough v. Johnson*, 2011 U.S. App. LEXIS 4072 (9th Cir. Mont. Mar. 4, 2011), the Ninth Circuit held that presentation of generic evidence of credit card agreements is insufficient. *Id.*, at *19. ("[The defendant] produced no evidence of express authorization of its fee request from [the plaintiff]; the presentation of generic evidence that all credit cards contain attorney's fees provisions was insufficient to create a genuine issue of material fact for the jury.") Midland does the same, here. Further, in the declaration of Ms. Barnette, Ms. Barnette submits no evidence that any agreement was mailed to Ms. Shannon, and instead submits an "exemplar" of a generic credit card agreement that she has no personal knowledge of, and of which is inadmissible hearsay. Ms. Barnette then goes on to claim that this inadmissible "exemplar" was sent to Ms. Shannon. Ms. Barnette, however, makes no claim of any personal knowledge regarding the mailing of this document to Ms. Shannon, nor does she

identify, much less produce, any business record reflecting admissible evidence that such a document was ever sent to Ms. Shannon.   Consequently, these statements made by Ms. Barnette are inadmissible as hearsay, and Midland fails to meet its burden to establish a right to compel arbitration.

### B.   EVEN IF THERE WAS AN ARBITRATION AGREEMENT, MIDLAND WAIVED THAT ISSUE LONG AGO.

One can resist arbitration on the ground that the party seeking to compel it has waived the right to do so. Cal. Code Civil Proc. § 1281.2(c); *Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 C4th 19, 27-31, 58 CR3d 434, 157 P3d 1029].   Waiver may be explicit, see *Gustafson v. State Farm Mut. Auto. Ins. Co.* (1973) 31 CA3d 361, 365, 107 CR 243 (settlement and release of arbitrable claim), but more often it is implied.   The primary evidence needed to establish waiver is that the party urging arbitration has done something to prejudice the other party's ability to receive the benefits of arbitration.   *Doers v. Golden Gate Bridge, Highway & Transp. Dist.* (1979) 23 C3d 180, 188, 151 CR 837, 588 P2d 1261; *McMillin Dev., Inc. v. Home Buyers Warranty* (1998) 68 CA4th 896, 909, 80 CR2d 611.   In determining whether there has been an implied waiver of the right to compel arbitration, the court may consider whether the party urging arbitration has previously taken steps inconsistent with an intent to invoke arbitration.   *Saint Agnes Med. Ctr. v. PacifiCare of Cal.* (2003) 31 C4th 1187, 1200-1205; *Engalla v. Permanente Med. Group, Inc.* (1997) 15 C4th 951, 983-984, 64 CR2d 843, 938 P2d 903; *Christensen v. Dewor Devs.* (1983) 33 C3d 778, 781-783, 191 CR 8, 661 P2d 1088; *Law Offices of Dixon R. Howell v. Valley* (2005) 129 CA4th 1076, 1096-1098.   Here, Midland has long ago waived any right to arbitrate that might exist by litigating in state court.   Midland filed suit in state court, Ms. Shannon answered, and the parties actively litigated the issues arising from Midland's claim of a debt.

**C.   ARBITRATION CANNOT BE COMPELLED WHEN ARBITRATION WOULD WAIVE STATUTORY RIGHTS UNDER THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. §§ 1692 ET SEQ. ("FDCPA")**

Arbitration agreements are enforceable under the FAA even where statutory claims are asserted, unless there is Congressional intent to preclude arbitration. *Shearson/American Express, Inc. v. McMahon* 482 US 220, 227, 107 S Ct 2332, 96 L Ed2d 185 (1987). The FDCPA expressly provides consumers with a remedy in the form of a class action. *15 U.S.C. § 1692k(a)(2)(B)*. However, the arbitration clause at issue here forces consumers to waive their rights to a class action remedy. This was not the intent of Congress. *Wyatt v. Creditcare, Inc.*, 2005 U.S. Dist. LEXIS 25787, *9 (N.D. Cal. Oct. 21, 2005) (Congress has expressly authorized class action cases under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C.S. § 1692 et seq., despite the fact that the statute does not require a showing of actual damages.).

A case involving federal substantive authority "demands consideration of … [of] whether the FAA's objectives are also paramount when, as here, rights created by a competing federal statute are infringed by an agreement to arbitrate." *Chen-Oster v. Goldman, Sachs & Co.*, 2011 U.S. Dist. LEXIS 73200, *10 (S.D.N.Y. July 7, 2011). The *Chen-Oster* court also noted that:

> Certainly, the Court's opinion in [*AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (U.S. 2011)] raises a question as to whether the Supreme Court, faced squarely with the issue presented here, would protect the full robustness of a federal right — particularly when that right requires proceeding on a class basis — or would mandate arbitration provided that some equivalent, individual right would be protected in that sphere.

*Id.*, *14. The court in *Chen-Oster* then makes the point Plaintiff makes here:

> [the Supreme Court] "has indicated in the past that "statutory claims may be the subject of an arbitration agreement" only because "'[b]y agreeing to arbitrate a statutory claim, a party

HYDE & SWIGART
San Diego, California

does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.'" [*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991)] (alteration in original) (quoting Mitsubishi Motors Corp., 473 U.S. at 628). Indeed,

[j]ust as it is the congressional policy manifested in the Federal Arbitration Act that requires courts liberally to construe the scope of arbitration agreements covered by that Act, it is the congressional intention expressed in some other statute on which the courts must rely to identify any category of claims as to which agreements to arbitrate will be held unenforceable.

*Mitsubishi Motors Corp.*, 473 U.S. at 627.

*Chen-Oster*, 2011 U.S. Dist. LEXIS 73200, *14-15.  When an arbitration provision "precludes plaintiffs from enforcing their statutory rights" it is unenforceable. *Chen-Oster* at *15, citing *American Express II*, 634 F.3d at 199; accord *Ragone v. Atlantic Video at Manhattan Center*, 595 F.3d 115, 125 (2d Cir. 2010).

And just as in *American Express II*, the class action waiver here interfers with the vindication of statutory rights.   In fact, that is its whole purpose of the waiver - to interfere with the rights of consumers after Defendant violates the law.

**D.   ARBITRATION ALSO CANNOT BE COMPELLED WHEN ARBITRATION WOULD WAIVE STATUTORY RIGHTS UNDER THE CALIFORNIA'S ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT, CALIFORNIA CIVIL CODE §§ 1788-1788.32 ("ROSENTHAL ACT")**

The FAA does not preempt state law if the state law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. *Shroyer v. New Cingular Wireless Servs.* 498 F.3d 976, 987, (9th Cir 2007) (expressly and conclusively rejecting argument that California law is preempted by FAA).  However, the FAA preempts state law that specifically applies to arbitration agreements.  *Perry v. Thomas* 482 US 483, 493, n 9, 107 S Ct 2520; 96 L Ed2d 426, (1987) ("state-law principle that takes its meaning precisely from the fact that a

HYDE & SWIGART
San Diego, California

contract to arbitrate is at issue" is preempted by FAA).

One of the remedies under California's Rosenthal Act is that of a class action, as the Rosenthal Act incorporates the FDCPA.  Cal. Civ. Code § 1788.17, a 1999 amendment to the Rosenthal Act, mandates debt collectors, collecting or attempting to collect a debt are subject to the remedies in 15 U.S.C.S. § 1692k.  Section 1692k provides for class actions. *15 U.S.C.S. § 1692k(a)(2)(B)*. Courts have found Cal. Civ. Code § 1788.17 broadens the remedies of the Rosenthal Act to provide for class actions.   See *Palmer v. Stassinos*, 233 F.R.D. 546, 2006 U.S. Dist. LEXIS 2617, 2006 WL 83059 (N.D.Cal. 2006); *McDonald v. Bonded Collectors*, LLC, 233 F.R.D. 576, 2005 U.S. Dist. LEXIS 17365, 2005 WL 2008202 (S.D.Cal. 2005); *Abels v. JBC Legal Group. PC*, 227 F.R.D. 541 (N.D.Cal. 2005).

The legislative history of Cal. Civ. Code § 1788.17 reveals that California legislature expressly intended the amendment to allow class actions based on the Rosenthal Act. The California Senate report on the amendment stated that

> This bill would provide that violators shall be subject to the remedies in Section 1692k of Title 15 of the United States Code, which contains the following remedies for violation: … All actual damages and an amount not to exceed the lesser of up to $ 500,000 or 1 percent of net worth penalty together with costs of suit and attorney's fees to the prevailing plaintiff(s) for class actions.

Cal. B. An., A.B. 969 Sen., 7/07/1999; see also Cal. B. An., A.B. 969 Assem., 7/15/1999 (stating the amendment would make violators liable to "a class composed of numerous debtors").

California's legislature expressly provided that this right cannot be waived, and this denial of waiver provision does not specifically apply to arbitration agreements, so the Ninth Circuit's *Shroyer* decision, any waiver of the right to bring a California's Rosenthal Act class action cannot be waived.  California's legislative intent in drafting California's Rosenthal Act was clear; consumers are not able to

HYDE & SWIGART
San Diego, California

waive their rights under the Act.  *See Cal. Civ. Code § 1788.33* ("Any waiver of the provisions of this title is contrary to public policy, and is void and unenforceable.") Because section 1788.17 is a general provision, it is not preempted by the FAA.

The arbitration clause at issue here expressly states that consumers are waiving their rights to sue in a class action, which is contrary to the express language of the California legislature in drafting the Rosenthal Act.  Therefore, any attempt at compelling arbitration in this matter must be denied as being contrary to public policy, and contrary to the express language of the California's Rosenthal Act.  *Sanchez v. Western Pizza Enterprises, Inc.* 172 CA4th 154, 181, 90 CR3d 818 (2009) (arbitration agreement containing a class arbitration waiver that was contrary to public policy and an unconscionable arbitrator selection clause was permeated by an unlawful purpose and thus unenforceable).

### E.  JUDICIAL ESTOPPEL

Midland claims a right, under an account agreement from Citibank, to compel Ms. Shannon to individually arbitrate her claim, and to force Ms. Shannon to give up her claims to relief for the class.  Yet Midland earlier disclaimed that there was any such enforceable account agreement, in the state court action that preceded this action.  *Plaintiff's Exhibit A*.  Specifically, Midland claimed a right to recover for unjust enrichment, which only exists in the absence of an enforceable contract, and also claimed a right to recover under an account stated, which as a new contract would discharge any earlier contractual obligations, such as the arbitration clause Midland now seeks to enforce.

Significantly here, Midland did not plead the existence of any account agreement in state court, but instead sought to recover a debt under theories that directly contradict Midland's present claim of an enforceable account agreement. Midland made prior inconsistent statements in the preceding state court action, and sought an advantage by those statements.  Now that Midland would like to force Ms. Shannon into arbitration, Midland has had a sudden change of heart on the

issue of whether an enforceable account agreement exists.   By making directly contradictory claims for the sole purpose of gaining a tactical advantage by forcing Ms. Shannon into individual arbitration, Midland is playing "fast and loose" with the judicial system, and is therefore judicially estopped from claiming the existence of an enforceable account agreement, and by extension from claiming a contraction right to force individual arbitration upon Ms. Shannon.

1.   THE "MINORITY VIEW" IS THE APPLICABLE STANDARDS FOR JUDICIAL ESTOPPEL IN THE NINTH CIRCUIT

"Judicial estoppel precludes a party from asserting a position in a current legal proceeding which is contrary to the position that party previously asserted in another." *Stevens Tech. Serv. v. SS Brooklyn*, 885 F.2d 584, 588 (9th Cir 1989).  The inconsistent prior position may be either factual or legal in nature; both are covered by the doctrine of judicial estoppel. *Helfand v Gerson* 105 F 3d 530, 535 (9th Cir 1997).  The primary purpose of judicial estoppel is "to protect the integrity of the judicial process" by "prohibiting parties from deliberately changing positions according to the exigencies of the moment," and to prevent parties from "playing fast and loose with the courts."   *New Hampshire v. Maine* 532 US 742, 749-750 (2001).

As shown below, both the Supreme Court and the Ninth Circuit have found that prior inconsistent positions may be the basis for judicial estoppel, if the party asserting the inconsistent position was playing "fast and loose" with the courts. This is the case regardless of whether or not the inconsistent position was adopted by the court.

i.   SUPREME COURT DOES NOT REQUIRE ADOPTION BY THE PRIOR COURT OF THE INCONSISTENT POSITION.

As judicial estoppel is an equitable doctrine, it is available at the discretion of the court.   As the "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of

principle" the court may take into account a number of factors. *New Hampshire* at 750-751. In *New Hampshire v Maine*, the Supreme Court listed three important factors, only one of which is compulsory.

The first factor, and the only factor which must be present under *New Hampshire* for the Court to impose judicial estoppel, is a prior inconsistent statement. *New Hampshire* at 750 ("a party's later position must be "clearly inconsistent" with its earlier position.").

The second factor, not mandatory under *New Hampshire*, is that the prior court have adopted the inconsistent statement or position. *New Hampshire* at 751 ("…courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position…"). While the court may find that the failure to establish this factor is enough to deny judicial estoppel, it should not do so if other factors predominate. In *Zedner v. United States*, the Supreme Court found that judicial estoppel was not applicable because there was no adoption by the court of the prior inconsistent position, and because "[e]ven if the other factors favor estoppel, they do not predominate." *Zedner v. United States* 547 U.S. 489, 505 (2006). Had these other factors predominated, judicial estoppel might apply.

The third, non-mandatory, factor is that the party making the inconsistent statements would derive an unfair advantage. *New Hampshire* at 751.

### ii.   NINTH CIRCUIT ALSO DOES NOT REQUIRE ADOPTION BY THE PRIOR COURT OF THE INCONSISTENT POSITION.

In the Ninth Circuit, there is case law indicating two possible tests for judicial estoppel: the "majority view" and the "minority view." The "minority view" adopted by the Ninth Circuit in 1998, is the proper test to apply to this case. Until 1998, the Ninth Circuit refused to adopt either view.

Under the "majority view," judicial estoppel may only be imposed if the inconsistent statement or position was adopted by the court in the prior litigation. *Stevens Tech. Serv.* at 588.

Under the "minority view," judicial estoppel should be imposed, even without adoption by the court of the inconsistent position, if the party asserting the inconsistent position "engaged in "fast and loose" behavior which undermined the integrity of the court." *Stevens Tech. Serv*. at 588.   This follows closely the language in *Zedner* indicating that judicial estoppel may apply even if the prior court did not adopt the inconsistent statement or position, if other factors "predominate."   Here, the factor that would predominate is the behavior pf playing "fast and loose" with the courts.   See *Milgard Tempering v Selas Corporation of America*  902 F 2d 703, 716 (9th Cir 1990) ("The minority view is more broad, extending judicial estoppel in all cases where the offending party has played "fast and loose" with the court, even if ultimately unsuccessful.")

Up until 1998, the Ninth Circuit consistently analyzed the issue of judicial estoppel under both views, while refusing to conclusively adopt either view.   See *Stevens Tech. Serv.* at 589 ("This circuit has acknowledged that the doctrine of judicial estoppel acts to bar inconsistent positions but has not stated the requirements for the application of the doctrine.") *Milgard Tempering* at 716 ("This circuit has recognized that the doctrine of judicial estoppel precludes parties from taking inconsistent positions in the same litigation but has yet to state the requirements for the doctrine's application.") *Morris v. California*, 945 F.2d 1456, 1459-1460 (9th Cir. 1991) ("Although this circuit has adopted the doctrine of judicial estoppel, we have not yet determined the circumstances under which it will be applied.").   *Britton v Co-op Banking Group*  4 F. 3d 742, 74 (9th Cir 1993) ("This circuit has declined to adopt either the majority or minority view of judicial estoppel.") and *United States v Garcia* 37 F.3d 1359, 1367 (9th Cir 1993) ("There are two varying views in the circuit courts regarding judicial estoppel. This circuit has not, as yet, adopted either the majority or minority view of judicial estoppel.")

In 1996, the Third Circuit adopted the minority view in *Ryan Operations GP v. Santiam-Midwest Lumber Co.*.   The Court found that while the "application of

judicial estoppel is particularly appropriate" where the party making the statement benefited because the court adopted their position, that such benefit, namely the adoption by the court of the prior inconsistent position, was "not, however, an independent requirement for application of the doctrine of judicial estoppel." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362-63 (3d Cir. 1996).

In 1998, in *Johnson v State of Oregon*, the Ninth Circuit adopted the reasoning of Ryan Operations and indicated that "if a claimant's particular representations are so inconsistent that they amount to an affront to the court, judicial estoppel may apply." *Johnson v. State of Oregon* 141 F.3d 1361, 1369 (9th Cir 1998). The Johnson Court said nothing about prior adoption of the party's inconsistent prior statement. While in the Johnson case the court ultimately found that the statements made did not warrant judicial estoppel, the rule stated by the Court is clearly the "minority view": if a statement is sufficiently inconsistent, regardless of whether it was adopted by a prior court, judicial estoppel may apply. The "minority view" has now been adopted by the Ninth Circuit.

Under the minority view, in order to prevail on the issue of judicial estoppel, Ms. Shannon must establish two factors: first, the Midland asserted a prior inconsistent position regarding the existence of an enforceable account agreement, and second, that Midland's acts amount to playing "fast and loose" with the courts. As shown below, Midland has been purposefully inconsistent with the courts in order to gain an advantage, and this attempt to gain an advantage is precisely the "fast and loose" behavior that judicial estoppel was designed to prevent.

### 2. MIDLAND HAS ASSERTED A PRIOR INCONSISTENT POSITION

On December 1, 2009, Midland filed a complaint against Ms. Shannon, in the matter of *Midland, LLC v Shelley Shannon*, in the Superior Court of California for the County of San Diego, case number 37-2009-00062877-CL-CL-NC (hereinafter, "State Court Action.). This complaint (hereinafter "State Court Complaint") made

HYDE & SWIGART
San Diego, California

claims regarding the same account at issue in this action.  A copy of this State Court Compliant is attached hereto as Exhibit A, and Ms. Shannon requests that this Court take judicial notice of this document, pursuant to FRE § 201.

In this State Court Complaint, Midland claimed that Ms. Shannon owed to a debt to Midland under five different theories.  None of these five theories require an account agreement or contract, and two of them specifically disclaim any enforceable account agreement.  Midland did not otherwise state in the pleadings that any enforceable account agreement existed, or make any claim "in the alternative" that such an agreement existed.

Two of the claims advocated by Midland in the State Court Complaint only exist in the absence of an enforceable account agreement.  These two claims are for unjust enrichment and for account stated.

### i. UNJUST ENRICHMENT

In 1996, the court found in *Paracor Finance, Inc v General Electric Capital Corporation* that unjust enrichment claims only lie in the absence of an enforceable contract.  *Paracor Finance, Inc v General Electric Capital Corporation* 96 F 3d 1151, 1167 (Ninth Cir 1996) ("Under both California and New York law, unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties.")

In 2004, the *Gerlinger* court went further, dismissing an unjust enrichment claim because the Plaintiff had not expressly disclaimed the contract they also pleaded, in the alternative.  The Court found that alternative pleading was not a sufficient fig leaf to allow these two directly contradictory claims, as "Even though Rule 8(e)(2) of the Federal Rules of Civil Procedure allows a party to state multiple, even inconsistent claims, it does not alter a substantive right between the parties and accordingly does not allow a plaintiff invoking state law to an unjust enrichment claim while also alleging an express contract."  *Gerlinger v Amazon.com, Inc*. 311 F Supp 2d 838, 856 (ND Cal, March 23, 2004).  The Court

clearly laid out the rule that these two claims may not simultaneously lie, stating that "Plaintiff cannot assert an express contract between him and one of the defendants in order to establish standing, while also bringing a claim for unjust enrichment.  A plaintiff may recover for unjust enrichment only where there is no contractual relationship between the parties." *Id.*

In 2007, the Ninth Circuit reinforced the *Gerlinger* holding, finding that unjust enrichment and breach of contract were too contradictory to be pleaded together, as "the liberal pleading policy has its limits. "[A] pleader may assert contradictory statements of fact only when legitimately in doubt about the facts in question." *Total Coverage, Inc. v. Cedent Settlement Services Group, Inc* 252 Fed. Appx. 123, 125-126    (Ninth Cir 2007)    See also *Qwest Communications Corporation v.  Herakles, LLC* 2008 U.S. Dist. LEXIS 22154, 36-37 (ED Cal, March 20, 2008) ("However, "[e]ven though Rule 8(e)(2) allows a party to state multiple, even inconsistent claims, it does not alter a substantive right between the parties and accordingly does not allow a plaintiff [to invoke] state law to an unjust enrichment claim while also alleging an express contract.") and *Continental D.I.A. Diamond Products, Inc. v. Dong Young Diamond Industrial Co., Ltd* 2008 U.S. Dist. LEXIS 65908, 12 (ND Cal, August 26, 2008) ("Although defendants may, of course, plead alternatives to their breach of contract theory, the Court agrees with plaintiff that defendants' unjust enrichment or quasi-contract theory must be dismissed because defendants entirely fail to allege, in the alternative, that no express agreement existed between the parties.")

The state court claim that Midland was entitled to recover for unjust enrichment clearly contradicts Midland's current, federal court position that Midland is entitled to enforce an arbitration clause in an enforceable account agreement.  The same is no less true for Midland's account stated claims.

### ii. ACCOUNT STATED

Under California state law, an account stated is a contract. *Jones v. Wilton* (1938) 10 Cal. 2d 493. The formation of the new contract discharges any earlier obligations, as the old contract is subsumed into the new agreement. *Merchantile Trust Company of San Francisco v Charles P Doe* (1914) 26 Cal App 246, 252 ("this agreement forms a new contract which takes the place of the original contract"), *RE Tharp Inc v. Miller Hay Company* (1968) 261 Cal App 2d 81, 84 ("It is elementary that an account stated is an express or implied agreement between a debtor and his creditor that a certain sum shall be paid and accepted in discharge of the debtor's obligation."). Claims for earlier contractual obligations and claims based on an account stated cannot simultaneously lie, as the account stated discharges the earlier obligations in favor of a new promise to pay.

Ms. Shannon has clearly met her burden to show the first, and most important factor of her claim for judicial estoppel: Midland has clearly taken an inconsistent position in the prior litigation. This leaves us with the other factor necessary for a finding in Ms. Shannon's favor under the "minority view" adopted by the Ninth Circuit in *Johnson v State of Oregon*, namely, whether Midland is playing "fast and loose" with the courts.

### 3. MIDLAND HAS PLAYED "FAST AND LOOSE" WITH THE COURTS

In *Religious Technology Center v Scott*, the plaintiff first asserted that claims for unfair competition and false designation of origin were enforceable claims, when these claims were asserted by the plaintiff. This same party then asserted that identical claims were not enforceable when brought as a counter-claim by one of the defendants. This behavior, making contradictory assertions regarding the same set of legal rights, was found to be playing "fast and loose" with the court system. The Court found that "Moreover, there is little doubt that RTC is playing "fast and loose" with the judicial system as required in the minority view of estoppel. To first assert that its unfair competition and false designation of origin claims are

justiciable and at the same time assert that Mayo's identical claims are not is at best questionable; in light of RTC's documented history of vexatious behavior, RTC's actions are indefensible."   *Religious Technology Center v Scott* 1996 US App LEXIS 8954, 31 (Ninth Cir 1996).

Midland's behavior here is strikingly similar.   Midland, like the plaintiff in Religious Technology Center, has taken precisely the opposite view of the same set of claims, changing positions to fit their perceived advantage.

When Midland faced the prospect of filing suit against a consumer in state court, who was likely to be unrepresented by counsel and likely to default, Midland thought it most advantageous to file claims that did not require them to prove a contract.

There are three advantages to Midland of pleading non-contractual theories. First, by filing claims solely on account theory and quasi-contractual theory, Midland hoped to relieve itself of the duty to state the facts of the case in any detail, such as identifying a contract, a date of execution, or a date of breach.   Indeed, a cursory review of the state court complaint, attached hereto as Exhibit A, reveals a dearth of any information regarding the terms of any contract, or of the account at all.   The only detail provided is the claimed original creditor, an amount of debt claimed, and a debt from which Midland would like to charge interest.   There is not even an account number.   Drafting pleadings in this way allows a secretary or paralegal to quickly generate pleadings without the burden of reviewing a file in any substantive fashion: why bother reviewing the facts when you aren't going to plead any?

Second, the absence of pleading a contract means that upon default or, much more rarely, at trial, Midland is unlikely to have to produce evidence of a contract, or of receipt and consent to the terms of any contract.   For account stated in particular, Midland typically hopes to prevail on the flimsiest of evidence, a single account statement, typically the last one sent to the consumer.

HYDE & SWIGART
San Diego, California

Third, if Midland does not claim breach of contract, there is no risk that Midland may lose on the breach of contract claim alone, and owe attorney's fees under California Civil Code § 1717.   In *Federal Deposit Insurance Corporation v Dintino*, a defendant prevailed on plaintiff's breach of contract claim, but lost on every other claim.  The Court found that under Civil Code § 1717, the plaintiff was liable to the defendant for attorney's fees incurred defending the breach of contract claim, despite the plaintiff having prevailed on all of the other causes of action, including a claim for unjust enrichment.  *Federal Deposit Insurance Corporation v Dintino* (2008) 167 Cal App 4th 333, 357-358.   By filing non-contractual claims, but asking for interest and fees only available with a contract, Midland hoped to recover all of the money available under a breach of contract claim, without running the risk of an attorney fee award to the defendant inherent in breach of contract claims in California.

Now in this action, Midland has developed a sudden interest in the existence of an enforceable account agreement: the risk of class action liability is much higher than the risk of an attorney fee award in the state court action.  Midland has changed position on the enforceability of a contract, based on the exact same set of facts, and the same documents, when to do so fits Midland's purposes.  This is the same type of tactic the court rejected in *Religious Technology*, and this Court should reject this nonsense as well.

As the Court found in *Total Coverage*, "the liberal pleading policy has its limits. "[A] pleader may assert contradictory statements of fact only when legitimately in doubt about the facts in question." *Total Coverage, Inc. v. Cedent Settlement Services Group, Inc* at 125-126.   Here, there was no doubt about the facts in question.   In the *Declaration of Pat Minford* submitted by Midland in support of this motion, Mr. Minford claims that Citibank sent the documents Midland relies upon to make its claims to Midland on about December 17, 2008. *See Declaration of Pat Minford, ¶¶ 2 and 3*.  Midland claims to have received these

HYDE & SWIGART
San Diego, California

documents in December of 2008, nearly a year prior to filing claims of unjust enrichment and account stated against Ms. Shannon in December of 2009.  In 2008, Midland already had all of the facts it has today regarding Ms. Shannon's account with Citibank.   Midland simply found it advantageous to claim there was no enforceable account agreement in 2009, when this meant a reduced risk of an attorney's fee award against Midland based on Civil Code § 1717, and now in 2011, Midland finds is advantageous to claim the opposite is true.  This is precisely the "fast and loose" behavior judicial estoppel is intended to avoid.

It matters little whether this behavior has a positive or negative effect on Ms. Shannon.   The offended party here is the court system.   As the Court stated in *Johnson v State of Oregon*, "if a claimant's particular representations are so inconsistent that they amount to an affront to the court, judicial estoppel may apply." *Johnson v State of Oregon* 141 F.3d 1361, 1369 (9th Cir 1998) (emphasis added).   The purpose of judicial estoppel, and the reason that "fast and loose" behavior such as that on display in Midland's Motion should not be tolerated or rewarded, is to safeguard the judicial system from this behavior.   As the Supreme Court found in 2001, the primary purpose of judicial estoppel is "to protect the integrity of the judicial process" by "prohibiting parties from deliberately changing positions according to the exigencies of the moment," and to prevent parties from "playing fast and loose with the courts." *New Hampshire v. Maine* at 742, 749-750.

As Ms. Shannon has shown that Midland both asserted prior inconsistent positions regarding the existence of an enforceable account agreement, and has shown that Midland's behavior amounted to playing "fast and loose" with the court system, this Court should order that Midland is judicially estopped from claiming that an enforceable account agreement between Citibank and Ms. Shannon exists. With no enforceable account agreement on which to claim a right to arbitrate, Midland's claim of a right to force Ms. Shannon into individual arbitration must fail.

**III. CONCLUSION**

There is absolutely no evidence of any arbitration agreement in this matter. The burden of proof on this issues falls squarely on the shoulders of Midland, and Midland has provided nothing in the way of evidence.  Further, even if there was such an agreement, Midland waived that issue long ago.

Further, as the Supreme Court has held, the fact that a party agrees to arbitration does not forgo the substantive rights afforded by the statute.  Under the FDCPA, one of the substantive rights available to consumers is the right to bring a class action, and consumers should not be forced to forgo these rights.

With regard to California's Rosenthal Act, the same analysis and logic applies except that unlike Congress, the California legislature *expressly* stated within the Rosenthal Act itself that such rights *cannot* be waived.

Finally, Midland is estopped from claiming a contractual right to arbitration after previously claiming in state court that no enforceable agreement existed when it found such a statement convenient.

For the reasons above, the defendant's motion to compel arbitration on these consumers should be denied.

**Hyde & Swigart**

Date: August 29, 2011                    By: /s/ Robert L. Hyde
                                         Robert L. Hyde
                                         Attorneys for Plaintiffs

                                         Clinton Rooney (SBN 221628)
                                         **Rooney & Lickel**
                                         1102 Cesar Chavez Parkway
                                         San Diego, CA 92113
                                         Phone: (619) 573-9547

HYDE & SWIGART
San Diego, California