1  TOMIO B. NARITA (SBN 156576)
   tnarita@snllp.com
2  ARVIN C. LUGAY (SBN 242599)
   alugay@snllp.com
3  R. TRAVIS CAMPBELL (SBN 271580)
   tcampbell@snllp.com
4  SIMMONDS & NARITA LLP
   44 Montgomery Street, Suite 3010
5  San Francisco, CA 94104-4816
   Telephone: (415) 283-1000
6  Facsimile:  (415) 352-2625

7
   Attorneys for Defendant
8  Midland Funding, LLC

9

10              UNITED STATES DISTRICT COURT

11            SOUTHERN DISTRICT OF CALIFORNIA

12

13  SHELLY SHANNON, individually       )   CASE NO.  11CV-0239 MMA NLS
    and on behalf of others similarly   )
14  situated                            )   **REPLY MEMORANDUM OF**
                                        )   **POINTS AND AUTHORITIES IN**
15              Plaintiffs,             )   **SUPPORT OF DEFENDANT'S**
                                        )   **MOTION TO COMPEL**
16       vs.                            )   **ARBITRATION**
                                        )
17                                      )   Date:     September 12, 2011
                                        )   Time:     2:30 p.m.
18  MIDLAND FUNDING, LLC,               )   Crtrm.:  5
                                        )
19              Defendant.              )   The Honorable Michael M. Anello
                                        )
20  ─────────────────────────          )

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.   ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

      A.    Shannon Concedes By Her Silence Most Of The Arguments Made In
            Midland's Motion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

      B.    Shannon Agreed To Arbitrate Her Disputes With Citibank And Its
            Successors, Including Midland, When She Used Her Card . . . . . . . . . .  2

      C.    Compelling Arbitration Of Shannon's Individual Claims Under The
            FDCPA And Rosenthal Act Would Not Prevent Her From Asserting Any
            Of Her Any Statutory Rights. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

      D.    Midland Did Not Waive Its Right To Arbitrate When It Filed The
            Collection Action In State Court, Nor Is Midland Estopped From
            Seeking To Compel Arbitration. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

            1.    Midland Did Not Waive Its Right To Arbitrate. . . . . . . . . . . . . .  8

            2.    The Doctrine Of Judicial Estoppel Does Not Preclude Midland
                  From Seeking To Arbitrate This Dispute. . . . . . . . . . . . . . . . . .10

                  a.    Shannon Misstates The Test For Judicial Estoppel. . . . . .  10

                  b.    Shannon Cannot Demonstrate That The State Court
                        Adopted The Allegedly Inconsistent Position. . . . . . . . .  12

                  c.    Midland Did Not Take An "Inconsistent Position" In State
                        Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

III.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

1

# TABLE OF AUTHORITIES

2

## FEDERAL CASES

3

4

*Abercrombie & Fitch Co. v. Moose Creek, Inc.*,
486 F.3d 629 (9th Cir. 2007)........................................ 12

5

*AT&T Mobility v. Concepcion*,
131 S. Ct. 1740 (2011). .................................................. 1

6

7

*ATSA of Cal., Inc. v. Continental Ins. Co.*,
702 F.2d 172 (9th Cir. 1983)........................................... 9

8

9

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006). .................................................... 1

10

*Cal Medical Assn. Inc. v. Aetna US Healthcare of California, Inc.*,
94 Cal. App. 4th 151 (2001) ........................................... 15

11

12

*Chen-Oster v. Goldman, Sachs & Co.*,
2001 WL 2671813 (S.D.N.Y. July 7, 2011). ............................ 7

13

14

*Creative Telecomm., Inc. v. Breeden*,
120 F. Supp. 2d 1225 (D. Haw. 1999). ................................. 9

15

*Dinsmore v. Piper Jaffray*, Inc.,
593 N.W.2d 41 (S.D. 1999)............................................. 2

16

17

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995). ................................................... 2

18

19

*Folio Impressions, Inc. v. Byer California*,
937 F.2d 759 (2nd Cir. 1991).......................................... 4

20

*The Flintoke Co. v. General Accident Assurance Co. Of Canada*,
410 F. Supp. 2d 875 (N.D. Cal. 2006). ................................. 4

21

22

*Galbraith v. Resurgent Capital Services*,
2006 WL 2990163 at *1 (E.D. Cal. Oct. 19, 2006). ...................... 2

23

24

*Gerlinger v. Amazon.com, Inc.*,
311 F. Supp.2d 838 (N.D. Cal. 2004). ............................... 15, 16

25

*Gilmer v. Interstate/ Johnson Lane Corp.*,
500 U.S. 20 (1991). .................................................... 7

26

27

*Goldwater v. Oltman*,
210 Cal. 408 (1930).................................................... 13

28

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000)........................................ 1

*Grundt v. City of Los Angeles*
2 Cal.3d 575 (1970)...................................... 14

*Hamilton v. State Farm Fire & Cas. Co.*,
270 F.3d 778 (9th Cir. 2001)............................. 12

*In re Hoopai*,
581 F.3d 1090 (9th Cir. 2009) (same)..................... 12

*In Re Texas E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*,
870 F. Supp. 1293 (E.D. Pa. 1992)........................ 4

*Letizia v. Prudential Bache Sec., Inc.*,
802 F.2d 1185 (9th Cir. 1986)............................ 9

*Matter of Chicago, Milwaukee, St. Paul, & Pacific R.R.*,
789 F.2d 1281 (7th Cir.1986)............................. 2

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)........................................ 1

*McCollough v. Johnson, Rodenburg & Lauiner*,
637 F.3d 939 (9th Cir. 2011)............................. 4

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985)................................... 5, 7

*New Hampshire v. Maine*,
532 U.S. 742 (2001)............................. 10, 11, 12

*Paracor Finance, Inc. v. GE Capital Corp.*,
96 F. 3d 1151 (9th Cir. 1996)........................... 15

*Randle v. Crawford*
604 F.3d 1047 (9th Cir. 2010)........................... 12

*Reed Elsevier, Inc. v. Muchnick*,
130 S. Ct. 1237 (2010).................................. 11

*Rodriguez de Quijas v. Shearson/American Express, Inc.*,
490 U.S. 477 (1989)...................................... 7

*Shady Grove Orthopedic Assoc. v. Allstate Ins. Co.*,
130 S.Ct. 1431 (2010)................................... 7

*Shearson/American Express, Inc. v. McMahon*,
482 U.S. 220 (1986)...................................... 5

*Sovak v. Chugai Pharm. Co.*,
280 F.3d 1266 (9th Cir. 2002)......................... 8, 9

*Stuart v. Unum Life Ins. Co. Of Am.*,
217 F.3d 1145 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Total Coverage, Inc. v. Cendant Settlement Services Group, Inc.*,
252 Fed. Appx. 123 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*,
576 F.3d 1040 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United Computer Sys., Inc. v. AT&T Corp.*,
298 F.3d 756 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Owens-El*,
889 F.2d 913 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Smith*,
609 F.2d 1294 (9th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Thompson*,
559 F.2d 552 (9th Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Ibrahim*,
522 F.3d 1003 (9th Cir.2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United Steelworkers of America v. Retirement Income Plan For Hourly-Rated Employees*,
512 F.3d 555 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Williams v. Boeing Co.*,
517 F.3d 1120 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Zedner v. United States*,
547 U.S. 489 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**STATE CASES**

*Crowley v. Katleman*,
8 Cal. 4th 666 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Discover Bank v. Superior Court*,
36 Cal. 4th 148 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Doers v. Golden Gate Bridge, Highway & Transp. Dist.*,
23 Cal. 3d. 180 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Mendoza v. Rast Produce Co., Inc.*,
140 Cal. App. 4th 1395 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*McMillin Dev., Inc. v. Home Buyers Warranty*,
68 Cal. App. 4th 896 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Saint Agnes Med. Ctr. v. PacifiCare of Cal.*,
31 Cal. 4th 1187 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Sanchez v. Western Pizza Enterprises, Inc.*,
172 Cal. App. 4th 154 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Steiner v. Rowley*,
35 Cal.2d 713 (1950). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Stockton Combined Harvester & Agricultural Works v. Glen Falls Ins. Co. of New York*,
121 Cal. 167 (1898). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Third Eye Blind, Inc. v. Near North Entertainment, Ins. Serv., LLC*,
127 Cal. App. 4th 1311 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## FEDERAL STATUTES

Fair Debt Collection Practices Act,
    15 U.S.C. § 1692b-j . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    15 U.S.C. § 1692k . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    15 U.S.C. § 1692k(a)(2)(B) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Federal Rules of Civil Procedure,
    Rule 23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Federal Rules of Evidence,
    Rule 602. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    Rule 803(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    7 U.S.C. § 26(n)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    10 U.S.C. § 987(e)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    15 U.S.C. § 1639c(e)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

# STATE STATUTES

California Fair Debt Collection Practices Act,
     Cal. Civ. Code § 1788.17.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
     Cal. Civ. Code § 1788.30(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
     Cal. Civ. Code § 1788.30(b).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
     Cal. Civ. Code § 1788.33. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

# OTHER AUTHORITIES

South Dakota Codified Laws,
     54-11-9. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

1   I.      **INTRODUCTION**

2         In her opposition, plaintiff Shelly Shannon ("Shannon") shoots wildly and

3   often, but she is always wide of the mark.  She concedes most of the arguments made

4   by Midland Funding, LLC ("Midland") in its moving papers, but argues that Midland

5   has not presented evidence of an enforceable agreement to arbitrate, that arbitration

6   would force her to waive her statutory rights, that Midland waived its right to enforce

7   the arbitration agreement, and that Midland is judicially estopped from seeking to

8   compel arbitration.  None of her arguments have merit.  The motion to compel

9   arbitration should be granted, and this action should be stayed.

10  II.     **ARGUMENT**

11          A.      **Shannon Concedes By Her Silence Most Of The Arguments Made In Midland's Motion**

12        Before addressing the arguments Shannon makes in her opposition, it is useful

13  to identify the points that she has conceded by her silence.

14

15        •      Shannon admits that the FAA embodies a broad policy favoring enforcement of agreements to arbitrate, and that any doubts regarding the scope of arbitration issues should be resolved in favor of arbitration;[1]

16

17        •      Shannon admits that, as the party resisting arbitration, she bears the burden of proving that the agreement to arbitrate is not valid or that it does not encompass the claims at issue in this case;[2]

18

19

20  _____

21        [1] *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)

22  ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places

23  arbitration agreements on equal footing with all other contracts."); *see also AT&T Mobility v. Concepcion*, 131 S. Ct. 1740, 1748 (2011).  Any "questions of arbitrability

24  must be addressed with a healthy regard for the federal policy favoring arbitration."

25  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  The

26  "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'"  *AT&T Mobility LLC*, 131 S. Ct. at 1748.  "[A]s a

27  matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone*, 460 U.S. at 24-25.

28        [2] *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

- • Shannon admits that the cardholder agreement containing her agreement to arbitrate is governed by South Dakota law;[3]

- • Shannon admits that, if the arbitration agreement is enforceable, it is a broad clause that encompasses the claims she has asserted against Citibank's successor in interest, Midland (she claims, however, that Midland may not enforce the agreement).[4]

The Court should consider each of these issues to be established when ruling on the motion. As discussed below, none of the arguments Shannon makes in opposition to the motion have merit, and the motion should be granted.

### B. Shannon Agreed To Arbitrate Her Disputes With Citibank And Its Successors, Including Midland, When She Used Her Card

Shannon make a half-hearted argument that Midland has not shown that an agreement to arbitrate exists. She ignores Midland's evidence of the agreement, however, and provides no evidence of her own. The undisputed record shows that Shannon agreed to arbitration by using her Citibank card, and that her account was subsequently sold to Midland, who has the right to enforce it.

---

[3] The agreement contains a South Dakota choice-of-law provision, *see* Barnette Declaration (Docket 14-2), Ex. 2, and thus South Dakota law governs whether a valid agreement to arbitrate exists. *See Dinsmore v. Piper Jaffray*, Inc., 593 N.W.2d 41, 44 (S.D. 1999) ("the question of whether the parties entered into a valid agreement to arbitrate is a question for the court to determine applying state contract law principles"); *accord First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").

[4] The arbitration clause broadly extends to "[a]ll Claims relating to your account, a prior related account, or our relationship," which "includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law . . . ." and explicitly states that assignees and successors in interest like Midland can invoke arbitration. *See* Barnette Declaration (Docket 14-2), Ex. 1. Shannon does not dispute that Citibank sold the account to Midland on December 17, 2008. *See* Minford Declaration (Docket 14-1), ¶ 2, Exs. A and B. An assignee like Midland can enforce an arbitration clause. *See Matter of Chicago, Milwaukee, St. Paul, & Pacific R.R.*, 789 F.2d 1281, 1282 (7th Cir.1986); *Galbraith v. Resurgent Capital Services*, 2006 WL 2990163 at *1 (E.D. Cal. Oct. 19, 2006).

1   Shannon argues that there is no evidence that the arbitration agreement "was

2   specifically agreed to by Ms. Shannon" but she ignores the fact that, under South

3   Dakota law and the terms of her cardholder agreement, her use of the credit card

4   creates a binding agreement to arbitrate.[5]

5   She also argues that the agreement attached to the Barnette Declaration is only

6   an "exemplar" of her agreement, and thus Ms. Barnette's testimony regarding the

7   agreement lacks personal knowledge and is hearsay.  Again, Shannon is mistaken.

8   Ms. Barnette testified that she is familiar with the business records of Citibank,

9   including the records relating to Shannon's account, and that the agreement attached

10  to her declaration is "**the form of the Card Agreement that was sent to Ms.**

11  **Shannon** in February 2006, when the account was opened."  *See* Barnette Declaration

12  (Docket 14-2), ¶¶ 1-4 (emphasis supplied).  Of course the cardholder agreement

13  submitted by Ms. Barnette is a "form" agreement – every credit card agreement is a

14  form.  The fact that Ms. Barnette attaches an "exemplar" of the exact agreement sent

15  to Shannon, rather than, for example, a photocopy of what was mailed to her, does not

16  render the agreement inadmissible.  Ms. Barnette has sufficient personal knowledge

17  to lay a foundation for the agreement, as well as the business records of Citibank

18  which reflect that it was mailed to Shannon and that Shannon used the card

19  thereafter.[6]  The Barnette Declaration also establishes that the cardholder agreement

20

21      [5] South Dakota law provides: "The use of an accepted credit card or the issuance
22  of a credit card agreement and the expiration of thirty days from the date of issuance
    without written notice from a card holder to cancel the account creates a binding
23  contract between the card holder and the card issuer with reference to any accepted
    credit card, and any charges made with the authorization of the primary card holder."
24  S.D. Codified Laws § 54-11-9; *see also* Barnette Declaration (Docket 14-2), Ex. 1 at 2
25  ("This Agreement is binding on you unless you cancel your account within 30 days after
    receiving the card and you have not used or authorized use of your card.").
26

27      [6] Ms. Barnette establishes her "personal knowledge" of the account records and
    the Agreement sufficient to satisfy the requirements of Rule 602 of the Federal Rules
28  of Evidence when she declares that he has reviewed the records and is familiar with their
    contents.  Rule 602 specifies that a "witness may not testify to a matter unless evidence

1   is a business record of Citibank that falls within the business records exception to the

2   hearsay rule, Rule 803(6) of the Federal Rules of Evidence.[7]

3       Shannon relies on *McCollough v. Johnson, Rodenburg & Lauiner*, 637 F.3d

4   939 (9th Cir. 2011), but the decision simply does not apply.  In *McCollough*, unlike

5   here, the defendant admitted that the contract it had offered in connection with the

6   summary judgment motion "**was not McCollough's** [agreement] and [thus defendant]

7   does not contest the district court's exclusion of the evidence." *Id*. at 950 (emphasis

8   supplied).  *McCollough* did not hold that evidence of an exemplar of a credit card

9

10

11  is introduced sufficient to support a finding that the witness has personal knowledge of
    the matter." Fed. R. Evid. 602.  The test for personal knowledge, however, is not

12  particularly stringent – it is simply "whether a jury or other trier of fact could reasonably
    believe that the witness perceived it." *United States v. Owens-El*, 889 F.2d 913, 915-16

13  (9th Cir. 1989) (witness had personal knowledge of the identity of his attacker even

14  though he admitted at time of trial that he did not recall the details of the attack); *Stuart

15  v. Unum Life Ins. Co. Of Am.*, 217 F.3d 1145, 1155 (9th Cir. 2000) (clear error to
    exclude declaration testimony of hospital executive concerning payments made by

16  hospital based on lack of personal knowledge); *United States v. Thompson*, 559 F.2d

17  552, 553-54 (9th Cir. 1977) (restaurant manager had personal knowledge that receipt,
    allegedly issued before he became manager, was not of type given by restaurant).  A

18  corporate executive may establish her personal knowledge and lay a foundation for the

19  company's contracts if she testifies, as Ms. Barnette has here, that she is familiar with
    the company's record keeping practices. *See, e.g.*, *The Flintoke Co. v. General Accident

20  Assurance Co. Of Canada*, 410 F. Supp. 2d 875, 884-85 (N.D. Cal. 2006).  An executive

21  may obtain personal knowledge of a matter by reviewing corporate records and by
    relying on the information supplied by other employees. *See, e.g., In Re Texas E.

22  Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 870 F. Supp. 1293, 1303-

23  04 (E.D. Pa. 1992).  Even testimony that a witness "believed" a matter occurred, as
    opposed to "knew" the matter occurred, can establish personal knowledge. *See, e.g.,

24  Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 763-64 (2nd Cir. 1991).

25

26  [7] Any witness who is familiar with the record keeping practices of a company may
    lay a foundation for its business records. *See, e.g., U-Haul Int'l, Inc. v. Lumbermens

27  Mut. Cas. Co.*, 576 F.3d 1040, 1044-45 (9th Cir. 2009).  An employee may lay a
    foundation for a business record even if she was not employed with the company at the

28  time it was generated.  *See United States v. Smith*, 609 F.2d 1294, 1301-02 (9th Cir.
    1979).

1  agreement sent to a consumer is never admissible, as Shannon tries to suggest – it

2  merely rejected defendant's "generic evidence that all credit card agreements contain

3  attorney's fees provisions...." *Id.*

4      A binding arbitration agreement exists here, and it covers the claims asserted

5  by Shannon against Midland.

6        **C.**     **Compelling Arbitration Of Shannon's Individual Claims Under The**
                  **FDCPA And Rosenthal Act Would Not Prevent Her From Asserting**

7                    **Any Of Her Any Statutory Rights**

8      The FDCPA does not mention arbitration and does not ban it.  Shannon claims,

9  however, that this Court cannot compel arbitration of her FDCPA claim or a

10  Rosenthal Act claim, because this would force her "waive" her "right to a class action

11  remedy."  She is wrong, for several reasons.

12      As Shannon concedes, the FAA's liberal policy favoring enforcement of

13  agreements to arbitrate disputes applies equally to arbitration of claims arising under

14  state or federal statutes.  *See Shearson/American Express, Inc. v. McMahon*, 482 U.S.

15  220, 226 (1986) (claims under Securities and Exchange Act of 1934 and RICO can be

16  arbitrated:  the "duty to enforce arbitration agreements is not diminished when a party

17  bound by an agreement raises a claim founded on statutory rights."); *Mitsubishi*

18  *Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 629 (1985) (Sherman

19  Act claims can be arbitrated: "By agreeing to arbitrate a statutory claim, a party does

20  not forgo the substantive rights afforded by the statute; it only submits to their

21  resolution in an arbitral, rather than a judicial, forum.").

22      Congress does have the power to prohibit the arbitration of statutory claims.

23  But the burden of proving that Congress intended to prevent arbitration of FDCPA

24  claims falls on Shannon, and she must demonstrate that Congress intended to do so

25  based upon the text, legislative history and purpose of the statute.  *See McMahon*, 482

26  U.S. at 227; *Mitsubishi Motors*, 473 U.S. at 628.  Shannon has utterly failed to meet

27  her burden.

28

1        The FDCPA does not create a statutory "right" for a consumer to pursue an

2  FDCPA claim in court as a class action, as Shannon suggests.  Rather, the FDCPA

3  merely dictates certain <u>damage</u> <u>limitations</u> that will apply "in the case of a class

4  action" under the FDCPA – in other words, the Act sets a cap on damages if a court

5  determines that the FDCPA claims asserted by the consumer qualify for class

6  treatment.[8]

7        Nor does the Rosenthal Act create a statutory "right" for a consumer to pursue

8  a claim in court as a class action.  The Rosenthal Act never mentions class actions at

9  all.  It incorporates by reference the remedies afforded by section 1692k of the

10  FDCPA, including, arguably, the class action remedy.[9]   Because consumers are not

11  granted a "right" to pursue a class action under the Rosenthal Act, enforcing the

12  arbitration agreement would not require Shannon to "waive" any right, and the anti-

13  waiver provisions of Civil Code section 1788.33 are not implicated.[10]

14        Indeed, a class action can never properly be considered as a statutory "right"

15  conferred upon consumers.  A class action is a procedural device which allows a

16

---

17       [8] Section 1692k(a)(2)(B) provides: "(a) Amount of damages.  Except as otherwise

18  provided by this section, any debt collector who fails to comply with any provision of
this subchapter with respect to any person is liable to such person in an amount equal

19  to the sum of – . .. .in the case of a class action, (i) such amount for each named plaintiff

20  as could be recovered under subparagraph (A), and (ii) such amount as the court may
allow for all other class members, without regard to a minimum individual recovery, not

21  to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector;

22  . . ."  *See* 15 U.S.C. § 1692k(a)(2)(B).

23       [9] *See* Cal. Civ. Code § 1788.17 ("[E]very debt collector collecting or attempting

24  to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j,
inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the

25  United States Code."); *but see* Cal. Civ. Code § 1788.30(a), (b) (allowing consumers to
seek actual or statutory damages "only in an individual action.").

26

27       [10] Shannon also relies upon *Sanchez v. Western Pizza Enterprises, Inc.*, 172 Cal.

28  App. 4th 154 (2009), but the holding in *Sanchez* is questionable in light of the Supreme
Court's decision in *Concepcion* which abrogated *Discover Bank v. Superior Court*, 36
Cal. 4th 148 (2005) and upheld the enforceability of class action arbitration waivers.

court to join the claims of other parties in the same action if certain specified requirements are met. *See Shady Grove Orthopedic Assoc. v. Allstate Ins. Co.*, 130 S.Ct. 1431, 1444 (2010) (Rule 23 of the Federal Rules of Civil Procedure "regulates procedure" and is valid under the Rules Enabling Act even if it has incidental effects on substantive rights).

The use of the words "class action" in the text of the FDCPA is not sufficient to evince an intent by Congress to prevent arbitration of FDCPA claims. When Congress wants to preclude the arbitration of statutory claims, it knows how to do so using express language.[11] It is no surprise, therefore, that the Supreme Court has repeatedly rejected attempts to infer a Congressional ban upon arbitration where no express ban exists.[12]

Shannon relies heavily on *Chen-Oster v. Goldman, Sachs & Co.*, 2001 WL 2671813 (S.D.N.Y. July 7, 2011), but it is not binding nor persuasive here. In *Chen-Oster*, unlike here, an order compelling the plaintiff to arbitrate her Title VII "pattern and practice" discrimination claim on an individual basis would have eliminated

---

[11] *See, e.g.*, 7 U.S.C. § 26(n)(2) ("No predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section");10 U.S.C. § 987(e)(3) ("It shall be unlawful for any creditor to extend consumer credit to a covered member or a dependent of such a member with respect to which . . . the creditor requires the borrower to submit to arbitration or imposes onerous legal notice provisions in the case of a dispute"); 15 U.S.C. § 1639c(e)(1) ("No residential mortgage loan and no extension of credit under an open end consumer credit plan secured by the principal dwelling of the consumer may include terms which require arbitration or any other nonjudicial procedure as the method for resolving any controversy or settling any claims arising out of the transaction").

[12] *See, e.g., GreenTree Fin. Corp. v. Randolph*, 531 U.S. 79, 90-91 (2000) (Truth in Lending Act claims subject to arbitration); *Gilmer v. Interstate/ Johnson Lane Corp.*, 500 U.S. 20, 25 (1991)(Age Discrimination in Employment Act claims subject to arbitration); *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989) (Securities Act actions subject to arbitration); *McMahon*, 482 U.S. 220 (Securities Exchange Act and RICO claims subject to arbitration); *Mitsubishi Motors Corp.*, 473 U.S. at 628 (Sherman Act claims subject to arbitration).

1   plaintiff's statutory right, because such claims can <u>only</u> be pursued as a class action.

2   *Id*. at *3. Here, by contrast, Shannon can pursue her FDCPA and Rosenthal Act

3   claims on an individual basis in the arbitration forum.

4       The arbitration agreement between Shannon and Citibank's successor –

5   Midland – does not impair any statutory "right" under the FDCPA or the Rosenthal

6   Act. The Agreement allows any such claims will proceed on an individual basis

7   rather than on a class basis. Shannon is free to seek to vindicate her statutory rights

8   in the arbitration forum.

9   **D.   Midland Did Not Waive Its Right To Arbitrate When It Filed The
10   Collection Action In State Court, Nor Is Midland Estopped From
    Seeking To Compel Arbitration**

11         **1.   Midland Did Not Waive Its Right To Arbitrate**

12       Shannon claims that Midland waived its right to elect arbitration, because it

13   filed suit in state court against her to collect her unpaid debt. She is mistaken. Under

14   the cardholder agreement, Shannon specifically agreed that Citibank or its successors

15   (like Midland) could initiate litigation without waiving the right to compel

16   arbitration, unless a trial had begun or a judgment had been entered. Her cardholder

17   agreement provides:

18           **At any time**, you or we may ask an appropriate court to compel arbitration of
    Claims, or stay litigation of Claims pending arbitration, even if such claims are
19   part of a lawsuit, unless a trial has begun or a final judgment has been entered.
    **Even if a party fails to exercise these rights at any particular time, or in
20   connection with particular Claims, that party can still require arbitration
    at a later time or in connection with any other Claims.**

21   *See* Barnette Declaration (Docket 14-2), Ex. 1 (emphasis supplied). Midland is

22   expressly authorized to elect arbitration following the filing of the state court action

23   because trial had not begun and no judgment was entered.

24       Nor can Shannon establish waiver under federal law, which applies here since

25   the dispute is governed by the FAA. *See Sovak v. Chugai Pharm. Co.*, 280 F.3d

26   1266, 1269-70 (9th Cir. 2002) (where agreement that contained the arbitration clause

27   at issue provided for the application of Illinois law, "[w]e must conclude that the

28   Agreement incorporates the FAA's rules for arbitration, but Illinois substantive law

applies in all other respects").  Under the FAA, "[a] dispute about a waiver of arbitration may properly be referred to the arbitrator."  *ATSA of Cal., Inc. v. Continental Ins. Co.*, 702 F.2d 172, 175 (9th Cir. 1983).  Thus, if the Court has any concerns about waiver, it can refer the waiver issue to the arbitrator.

Under the FAA, arbitration waivers "are not favored."  *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986).  To prove that a waiver of arbitration exists, a party opposing arbitration "bears a heavy burden of proof" and must demonstrate all of the following:  "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts."  *Id.*; *accord Sovak*, 280 F.3d at 1270.  "Any doubts as to waiver are resolved in favor of arbitration."  *Creative Telecomm., Inc. v. Breeden*, 120 F. Supp. 2d 1225, 1232 (D. Haw. 1999) ("If there is any ambiguity as to the scope of the waiver, the court must resolve the issue in favor of arbitration.").

Absent a showing a prejudice, a party does not per se waive the right to arbitrate by filing pleadings, including initially filing a lawsuit, in Court.  *See*, *e.g.*, *United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 765 (9th Cir. 2002) (party did not waive the right to arbitrate merely by initially filing complaint in state court); *ATSA of Cal., Inc.*, 702 F.2d at 175 (party did not waive right to arbitrate by filing pleadings in response to cross-claims asserted by other party).

The California state authorities cited by Shannon also follow the federal approach, in that "the mere filing of a lawsuit does not waive contractual arbitration rights" – rather, litigation and obtaining a judgment on the merits of arbitrable issues waives a party's right to arbitration.  *Doers v. Golden Gate Bridge, Highway & Transp. Dist.*, 23 Cal. 3d 180, 188 (1979); *see also McMillin Dev., Inc. v. Home Buyers Warranty*, 68 Cal. App. 4th 896, 909 (1998).

There is no prejudice where, as here, the state court action was dismissed in its early stages.  "Prejudice typically is found only where the petitioning party's conduct

has substantially undermined this important public policy [of using arbitration as a speedy and relatively inexpensive means of dispute resolution] or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration.*"  Saint Agnes Med. Ctr. v. PacifiCare of Cal*., 31 Cal. 4th 1187, 1203-1204 (2003) ("Because merely participating in litigation, by itself, does not result in a waiver, courts will not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses.").

Shannon cannot demonstrate any prejudice arising out of Midland's election of arbitration following the filing and voluntary dismissal of its complaint in state court. The state action was dismissed in its early stages and Midland has undertaken no conduct inconsistent with its right to arbitrate.  Indeed, Midland expressly reserved arbitration as a defense in its Answer to the present action.  Moreover, as noted above, Midland's election was expressly authorized under the Agreement.

**2**.   **The Doctrine Of Judicial Estoppel Does Not Preclude Midland From Seeking To Arbitrate This Dispute**

Shannon says Midland is "judicially estopped" from seeking to arbitrate this dispute, because Midland's state court complaint, which sought recovery under various common count theories, but not under the cardholder agreement, amounts to a "prior inconsistent statement" and is evidence that Midland is playing "fast and loose" with the judicial system.  For several reasons, Shannon's judicial estoppel argument fails.

**a.**   **Shannon Misstates The Test For Judicial Estoppel**

Shannon claims the so-called "minority view" on judicial estoppel does not require that a court has adopted the party's prior inconsistent position.  But the "minority view" did not survive the Supreme Court's decision in *New Hampshire v. Maine*, 532 U.S. 742 (2001), which set out the three factors used to determine when judicial estoppel can apply:

First, a party's later position must be clearly inconsistent with its earlier position. **Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that**

1
2
3
4

**judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, . . . and thus poses little threat to judicial integrity**.  A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

5 *Id*. at 751 (citations and quotation marks omitted, emphasis supplied).

6        In fact, the Supreme Court has subsequently held that judicial estoppel cannot

7 apply if a party has not succeeded in persuading a court to accept that party's prior

8 inconsistent position.  *See Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1248-49

9 (2010) (refusing to apply judicial estoppel doctrine: "As we explained in *New*

10 *Hampshire*, that doctrine typically applies when, among other things, a party has

11 succeeded in persuading a court to accept that party's earlier position, so that judicial

12 acceptance of an inconsistent position in a later proceeding would create the

13 perception that either the first or the second court was misled.") (citations and

14 quotation marks omitted); *see also Zedner v. United States*, 547 U.S. 489, 505 (2006)

15 (refusing to apply judicial estoppel where second *New Hampshire* factor is not met:

16 "petitioner's (mistaken) agreement that waivers are enforceable does not provide a

17 ground for estoppel because petitioner did not 'succee[d] in persuading' the District

18 Court to accept the validity of prospective waivers.  On the contrary, the District

19 Court requested the waiver and produced the form for petitioner to sign. Even if the

20 other factors favor estoppel, they do not predominate.").[13]

21        Shannon knows that the state court never adopted the positions set forth in

22 Midland's state court complaint, so she relies upon earlier decisions of the Ninth

23 Circuit which do not mention this requirement.  All of these cases predate the

24

25        [13] Shannon clips quotations out of context from *Zedner* in her effort to suggest that
26 the three requirements from *New Hampshire* are actually a balancing test, and that all
three requirements need not be met if the other two "predominate."  But the Supreme
27 Court confirmed in *Zedner* that all three factors must be established, and it refused to
find an estoppel where the petitioner had not succeeded in persuading the trial court of
28 its prior inconsistent position, even if the other two factors were in favor of estoppel.

1    Supreme Court's decision in *New Hampshire*, however, and every decision of the

2    Ninth Circuit since 2001 has required all three requirements – including adoption of

3    the inconsistent position by the earlier court – to establish judicial estoppel.

4        For example, in *Randle v. Crawford*, the Ninth Circuit held that "[i]n

5    determining whether to apply judicial estoppel, we consider (1) whether a party's

6    position in the later judicial proceeding is clearly inconsistent with that party's earlier

7    position, (2) **whether the party persuaded the first court to accept the earlier**

8    **position, so that judicial acceptance of an inconsistent position in a later**

9    **proceeding would create the perception that one of the two courts was misled**,

10   and (3) whether the party seeking to assert an inconsistent position would derive an

11   unfair advantage or impose an unfair detriment on the opposing party if not

12   estopped." 604 F.3d 1047, 1054 (9th Cir. 2010) (citations omitted, emphasis added).[14]

### b.  Shannon Cannot Demonstrate That The State Court Adopted The Allegedly Inconsistent Position

15       Midland's state court complaint was dismissed before trial, and thus the trial

court never ruled on whether a written agreement existed, or did not exist, between

the parties.  Thus, contrary to Shannon's argument, the state court never adopted the

allegedly "inconsistent" position taken by Midland, in that action, *i.e.*, that there was

no written contract.[15]  Given this, Shannon cannot meet the second element for

judicial estoppel, and her argument fails.

---

[14] *See also Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001) ("[t]his court has restricted the application of judicial estoppel to cases where the court relied on, or 'accepted,' the party's previous inconsistent position.").*Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629 (9th Cir. 2007) (adopting the three factors used in *New Hampshire*); *United States v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir.2008) (same); *United Steelworkers of America v. Retirement Income Plan For Hourly-Rated Employees*, 512 F.3d 555 (9th Cir. 2008) (same); *Williams v. Boeing Co.*, 517 F.3d 1120, 1134-35 (9th Cir. 2008) (same); *In re Hoopai*, 581 F.3d 1090, 1097 (9th Cir. 2009) (same).

[15] As explained below, however, Midland denies that it took any "inconsistent" position in state court.

### c.   Midland Did Not Take An "Inconsistent Position" In State Court

When Shannon failed to pay her debt voluntarily, there were a number of options available to Midland to seek to recover it.  Midland could have initiated an arbitration proceeding against her.  It could have filed suit alleging a single count for breach of the cardholder agreement.  It could have combined that breach of contract claim with alternative claims for relief under common count theories.  Or it could elect to proceed solely under the alternative claims for relief, such as unjust enrichment or account stated.  It chose the latter.

Midland's decision to proceed in state court solely on common counts rather than under the contract is not a "prior inconsistent statement" nor is Midland playing it "fast and loose" here.  The common counts that Midland did file, and the breach of contract claim that Midland elected not to file, all take the same "consistent" position – namely, that Shannon borrowed money from Midland's predecessor (Citibank) for goods and services and that she failed to repay it.  If Shannon's novel "judicial estoppel" position were accepted, then a party could never plead alternative counts in a complaint, as each alternative count would judicially estop the other.  This is not the law that applies in California state court, where Midland's complaint was filed.

To the contrary, California law expressly permits Midland to plead alternative counts – or even inconsistent counts – and Midland is entitled to proceed all the way to trial on all such claims.  This principle was recognized over eighty years ago by the California Supreme Court in *Goldwater v. Oltman*, 210 Cal. 408 (1930), where a complaint included eight causes of action based upon a written promissory note, along with a ninth claim for book account, and a tenth for account stated.  *Id*. at 423. The Supreme Court held that pleading alternative counts was proper, and that the trial court erred when it compelled the plaintiff to elect the claim upon which he would proceed to trial. "Assuming, for the purposes of this opinion, that the first eight causes of action can be treated as but one (since they are all upon the note in one form or another), the plaintiff clearly had the right to sue upon the note or upon the original

1  indebtedness, *i.e.,* book account or account stated and this being so, under our
2  practice, under the authorities supra, it was proper for the plaintiff to join the causes
3  of action in one complaint, and it was error for the trial court to compel him to elect."
4  *Id*. at 423-24.[16]

5       Shannon suggests it was somehow improper for Midland to proceed on a
6  common count claim if it was unsure that it would be able to prove all of the elements
7  of breach of contract.  Again, she ignores California law.  Like any plaintiff, Midland
8  can plead alternative (or even inconsistent) counts if it is unsure about what the
9  evidence might show at trial.  *See, e.g., Grundt v. City of Los Angeles*, 2 Cal.3d 575,
10  586 (1970 ) (error to refuse to allow plaintiff to go to trial on both a negligence and
11  intentional tort theory:  "There is an abundance of authority permitting a plaintiff to
12  go to the jury on both intentional and negligent tort theories, even though they are
13  inconsistent.  It has often been pointed out that there is no prohibition against
14  pleading inconsistent causes of action stated in as many ways as plaintiff believes his
15  evidence will show, and he is entitled to recover if one well pleaded count is
16  supported by the evidence.").[17]

17

---

18      [16] Similarly, in *Steiner v. Rowley*, 35 Cal.2d 713 (1950), the Supreme Court
19  reversed the dismissal of a claim alleging a broker had obtained a secret commission,
20  even though plaintiffs also alleged the broker had received the same monies under an
   escrow agreement to which they were parties.  "A complaint may plead inconsistent
21  causes of action, although it be verified if there are no contradictory or antagonistic
22  facts."  *Id*. at 718-19 (citations omitted); *see also Stockton Combined Harvester &*
   *Agricultural Works v. Glen Falls Ins. Co. of New York*, 121 Cal. 167, 171 (1898)
23  (affirming judgment despite inconsistent count in pleadings: "Besides, we see no reason
24  why a cause of action arising out of the same transaction may not be separately stated
   in different ways, even though they are inconsistent with each other.  The defendant is
25  permitted to plead inconsistent defenses (Id. § 441); and there can be no good reason
26  why the same rule should not apply to different counts of a complaint as well as to the
   answer.").

27

28      [17] *See also Mendoza v. Rast Produce Co., Inc.,* 140 Cal. App. 4th 1395, 1402
   (2006) ("When a pleader is in doubt about what actually occurred or what can be
   established by the evidence, the modern practice allows that party to plead in the

1    Shannon relies upon two Ninth Circuit cases which correctly state that where

2  the terms of an express contract prevent a plaintiff from recovering, the plaintiff is not

3  entitled to seek the same damages using a quasi-contract theory of unjust enrichment.

4  *See Paracor Finance, Inc. v. GE Capital Corp*, 96 F. 3d 1151, 1167 (9th Cir. 1996)

5  (sophisticated investors' unjust enrichment claims against lender were barred by

6  express contracts governing a debenture offering); *Total Coverage, Inc. v. Cendant*

7  *Settlement Services Group, Inc.*, 252 Fed. Appx. 123 (9th Cir. 2007) (plaintiff's

8  quasi-contract claims were directly contrary to the limited remedies established in the

9  parties's written agreement).[18]  These cases are irrelevant, however, because Shannon

10  does not argue that the cardholder agreement prevented Midland from recovering the

11  unpaid charges.  To the contrary, her argument assumes the agreement permitted

12  Midland to recover the debt.  Midland was not seeking any amount under its common

13  count theories that the express contract prevented Midland from recovering, so

14  *Paracor* and *Total Coverage* do not help Shannon.[19]

15

---

16  alternative and make inconsistent allegations.); *Third Eye Blind, Inc. v. Near North*

17  *Entertainment, Ins. Serv., LLC,* 127 Cal. App. 4th 1311, 1323 (2005) ("It is well
established that 'a party may plead in the alternative and may make inconsistent

18  allegations."); *see also Crowley v. Katleman,* 8 Cal. 4th 666, 690 (1994) (rejecting

19  argument that allowing claim for malicious prosecution to proceed where fewer than all
claims in underlying litigation lacked probable cause would stifle practice of pleading

20  inconsistent counts:  "The plaintiff remains free to allege any and all 'inconsistent

21  counts' that a reasonable attorney would find legally tenable on the basis of the facts
known to the plaintiff at the time.").

22

23  [18] *See also Cal Medical Assn. Inc. v. Aetna US Healthcare of California, Inc.,* 94
Cal. App. 4th 151, 172 (2001) (physicians could not recover unpaid medical bills from

24  hospital using unjust enrichment theory where physicians had written agreement to
obtain compensation from intermediaries: "[A]s a matter of law, a quasi-contract action

25  for unjust enrichment does not lie where, as here, express binding agreements exist and

26  define the parties' rights.") (citations omitted).

27  [19] *Gerlinger v. Amazon.com, Inc.*, 311 F. Supp.2d 838 (N.D. Cal. 2004) is not
controlling, nor is it persuasive here.  *Gerlinger* was decided on a motion for judgment

28  on the pleadings under federal pleading standards.  The court held that, even though
Rule 8(e)(2) of the Federal Rules of Civil Procedure allows a party to state "multiple,

1    For similar reasons, it was proper under state law for Midland to plead an
2    account stated theory, and it would even have been permissible for Midland to join
3    that claim and a claim under the written agreement in the same complaint. *See*
4    *Goldman*, 210 C. at 423 (complaint properly contained breach of contract claim and
5    alternative claim for account stated).  The cases cited by Shannon for the notion that
6    an account stated replaces the original contract are therefore irrelevant.

7    In sum, even though Midland elected to only pursue common count claims in
8    the state court complaint against Shannon, this is not inconsistent with the existence
9    of the written cardholder agreement.

10   **III.   <u>CONCLUSION</u>**

11   For each of the forgoing reasons, Midland respectfully requests that the Court
12   grant this Motion and issue an Order compelling arbitration of Shannon's claims in
13   accordance with the express terms of the valid and enforceable Arbitration Agreement
14   governing the Account.  In addition, the Court should stay this action pending the
15   completion of arbitration proceedings.

16

17   DATED: September 2, 2011        SIMMONDS & NARITA LLP
                                     TOMIO B. NARITA
18                                   ARVIN C. LUGAY
                                     TRAVIS B. CAMPBELL
19

20                                   By:   s/Tomio B. Narita
                                          _____
21                                        Tomio B. Narita
                                          Attorneys for Defendant
22                                        Midland Funding, LLC

23

24

25   _____

26   even inconsistent claims, it does not alter the substantive rights of the parties" and
27   therefore did not permit a party to pursue unjust enrichment and breach of contract. *Id.*
28   at 856.  Here, the issue is whether Midland's state court pleadings were permissible
     under California law.  *Gerlinger* never addresses the California Supreme Court
     authorities cited by Midland, *supra*, which show its state court complaint was proper.

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby declare:

I am a citizen of the United States and employed in San Francisco County, California.  I am over the age of eighteen and not a party to the within-entitled action. My business address is:  44 Montgomery Street, Suite 3010, San Francisco, CA 94104.

On September 2, 2011, I served a copy of the within document by electronic transmission.  I hereby certify that the foregoing document was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all parties on the electronic service list maintained for this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 2nd day of September, 2011 at San Francisco, California.

_____/s/ Tomio B. Narita_____
Tomio B. Narita
